[No. S140865. Mar. 8, 2007.]

In re JESUS O., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
JESUS O., Defendant and Appellant.

## COUNSEL

Patricia Ihara, under appointment by the Supreme Court, and Kiana Sloan-Hillier, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Robert R. Anderson and Mary Jo Graves, Chief Assistant Attorneys General, Pamela C. Hamanaka, Assistant Attorney General, Margaret E. Maxwell, Stephanie Brenan, Kristofer Jorstad, Lawrence M. Daniels and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHIN, J.—** ■ Theft "from the person of another" is grand theft. (Pen. Code, § 487, subd. (c).) Here, the juvenile and a cohort, intending to steal property, assaulted someone who possessed a cellular telephone. The victim dropped the telephone while fleeing. Thereafter, the cohort picked the telephone off the ground and kept it. We must decide whether these facts constitute grand theft from the person. Because the telephone was on the victim's person when the assault began, and the victim did not voluntarily lay it aside but dropped it while fleeing, we conclude that they do. When someone, intending to steal, causes property to become separated from the victim's person, then gains possession of the property, the theft is from the person.

### I. FACTS AND PROCEDURAL HISTORY

Because the sole issue before us is the sufficiency of the evidence to support the grand theft finding, we state the evidence in the light most favorable to the judgment below. (*People v. Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738].)

In the early evening of July 5, 2004, Mario H. and three middle school companions were together at a McDonald's restaurant in Van Nuys. When the four left the restaurant, the juvenile, Jesus O., and another, Roberto A., followed them. The four walked to a nearby alley to get away from Jesus and Roberto, but the latter two spotted and approached them. Roberto and Jesus loudly announced, "Assassin Kings," and asked Mario if he had any money. Mario said he did not. A moment later, Jesus "sucker punched" one of Mario's companions in the mouth. A fight broke out.

At one point, Roberto pulled out a knife and threatened to "shank" Mario. Scared, Mario and his companions fled down the alley and jumped over a fence. Mario checked his pants pocket and discovered that his cellular telephone was missing. One of the group saw the telephone lying on the ground in the alley and then observed Roberto pick it up and put it in his pocket.

After a hearing, the juvenile court sustained allegations that Jesus committed grand theft from the person and attempted second degree robbery. The Court of Appeal found insufficient evidence that the theft of the cellular telephone was from the person and reduced the grand theft finding to one of petty theft. We granted the Attorney General's petition for review.[1]

## II. Discussion

■ The crime of theft is divided into two degrees, petty theft and grand theft. (Pen. Code, § 486.) As relevant here, Penal Code section 487 provides: "Grand theft is theft committed in any of the following cases: [¶] . . . [¶] (c) When the property is taken from the person of another." We must decide whether the evidence supports a finding that Jesus and Roberto committed grand theft from the person when Roberto took the cellular telephone.

The seminal California case interpreting the "from the person" requirement dates from the 19th century. In *People v. McElroy* (1897) 116 Cal. 583 [48 P. 718] (*McElroy*), the defendant took $17 from a wallet in the pocket of the victim's trousers. The victim had taken the trousers off and was using them as a pillow. The defendant took the money while the victim slept. Convicted of grand larceny "from the person" under Penal Code former section 487, the predecessor version of today's grand theft statute (see *People v. Avery* (2002) 27 Cal.4th 49, 53, fn. 4 [115 Cal.Rptr.2d 403, 38 P.3d 1]), the defendant appealed. We reversed the conviction, finding the defendant did not take the property from the person. We explained that "[t]he stealing of property from the person has been from an early period under the English statutes treated as a much graver and more heinous offense than ordinary or common theft— partly by reason of the ease with which it can be perpetrated and the difficulty of guarding against it, and partly because of the greater liability of endanger

---

[1] The juvenile court also found that Roberto A. committed the same grand theft. In a separate appeal, the Court of Appeal reduced that finding to petty theft for the same reasons. We also granted review in that case and are holding it pending this decision. (*In re Roberto A.*, review granted Apr. 19, 2006, S142280■ see Cal. Rules of Court, rule 8.512(d)(2).)

ing the person or life of the victim. The same general reason and purpose animate the modern statutes, including our own . . . ." (*McElroy, supra,* 116 Cal. at p. 584.) We then considered whether, to be a taking from the person, "the property must be actually on, or attached to, the person, or merely under the eye, or within the immediate reach, and so constructively within the control of the owner." (*Id.* at p. 585.)

After reviewing the authorities, we found that the statute's "obvious purpose was to protect persons and property against the approach of the pickpocket, the purse-snatcher, the jewel abstracter, and other thieves of like character who obtain property by similar means of stealth or fraud, and that it was in contemplation that the property shall at the time be in some way actually upon or attached to the person, or carried or held in actual physical possession—such as clothing, apparel, or ornaments, or things contained therein, or attached thereto, or property held or carried in the hands, or by other means, upon the person; that it was not intended to include property removed from the person and laid aside, however immediately it may be retained in the presence or constructive control or possession of the owner while so laid away from his person and out of his hands. . . . Had the legislature intended that the offense should include instances of property merely in the immediate presence, but not in the manual possession about the person, it would doubtless have so provided, as it has in defining robbery. Robbery is defined as 'the felonious taking of personal property in the possession of another from his person *or immediate presence,*' etc. (Pen. Code, [§] 211), while the requirement of this offense is that it shall be 'taken *from the person.*' " (*McElroy, supra,* 116 Cal. at p. 586.)

We concluded that the facts of the case "did not constitute grand larceny within the statute. The garment from which the money was taken was not at the time on the person of [the victim]; it was folded up and used as a part of his bed. Had the garment alone been taken under like circumstances the theft could not be held to have been from the person. A man does not wear his bed as he does his clothes. The money was no more on his person in any proper sense than if it had been concealed under his bed or elsewhere about it, or left in his clothes upon a chair or hanging on the wall." (*McElroy, supra,* 116 Cal. at pp. 586–587.)

Applying this test to this case, obviously the telephone was no longer on Mario's person when Roberto picked it up from the ground in the alley. Mario was a substantial distance away at the time. But *McElroy* is not quite on point, for here the telephone was on Mario's person when Jesus and

Roberto first assaulted him. Mario did not voluntarily lay it aside, but instead dropped it unintentionally while fleeing from Jesus and Roberto. *McElroy* does not answer the question whether the fact that the telephone was on the victim's person when the assault began supports the grand theft finding. To seek an answer to this question, we must examine decisions from the Courts of Appeal.

Some cases that the Attorney General relies on have expansively applied the rule of *McElroy, supra,* 116 Cal. 583, that the property must be physically attached to the victim's person. In *People v. Huggins* (1997) 51 Cal.App.4th 1654 [60 Cal.Rptr.2d 177], the victim was sitting on a chair. The defendant took her purse while it was on the ground but in contact with her foot. The Court of Appeal, relying on "the crucial fact that the purse was at all times in contact with the victim's foot" (*id.* at p. 1657), found the defendant had taken the purse from her person. "Here, the victim's purse had not been laid aside in the sense that the victim's pants had been laid aside in *McElroy*. There the pants had been folded up and used as part of a bed. Here, by contrast, . . . the victim at all times maintained contact with her purse for the purpose of maintaining dominion and control over it. Here, therefore, the purse was actually attached to her person within the meaning of the rule in *McElroy*." (*Id.* at p. 1658.)

In *In re George B.* (1991) 228 Cal.App.3d 1088 [279 Cal.Rptr. 388], the juvenile's accomplice "stole a bag of groceries from a shopping cart as the victim [Ulbrich] was pushing the cart in the parking lot of a market." (*Id.* at p. 1090.) The Court of Appeal held that these facts supported a finding that the groceries were on the person under the rule of *McElroy, supra,* 116 Cal. 583. "*McElroy* is distinguishable on its facts. Ulbrich had not laid the grocery bag aside or abandoned control of it. She was actively carrying the bag, not in her hands to be sure but, as described in *McElroy*, 'by other means,' i.e., through the medium of the shopping cart with which, at the time of the theft, she was both in physical contact and control. Just as the shopping cart was 'attached to [her] person' so also were its contents in precisely the same sense as are the contents of a purse which is stolen from the physical grasp of the victim. In *McElroy*, neither the money nor the pants were attached to or in the physical grasp of the slumbering victim. Although his head rested on the folded pants, he was neither holding nor carrying them or, perforce, the money. The circumstances in *McElroy* posed little or no threat of injury or death to the victim whereas in the instant case a theft *from* a cart in the victim's immediate grasp posed as real a threat of injury or death as a theft *of* the cart itself." (*In re George B., supra,* at p. 1092.)

Neither *People v. Huggins*, *supra*, 51 Cal.App.4th 1654, nor *In re George B.*, *supra*, 228 Cal.App.3d 1088, is on point, for in this case the property was not attached to the victim at the moment the juveniles gained possession under even the most expansive reading of that requirement.

Two cases defendant relies on are also not on point. In *People v. DeVaughn* (1923) 63 Cal.App. 513 [218 P. 1020], the court explained that, to support a finding of theft from the person, "there must be evidence to support the conclusion that at the time the property was taken it was actually upon or attached to the person, by his clothing or otherwise, or that it was in some manner in his actual physical possession." (*Id.* at pp. 515–516.) It found that the evidence of the case supported the finding that the defendant took a pocketbook directly from the person's possession. This case is inconclusive because the court did not have to confront the question of what the result would have been if the defendant's actions had caused the property to become separated from the victim's person before the defendant gained possession.

In *People v. Williams* (1992) 9 Cal.App.4th 1465 [12 Cal.Rptr.2d 243], the victim, Cirrencione, entered her car and placed some groceries in the back. She "threw her purse onto the front passenger seat," and then sat in the driver's seat. (*Id.* at p. 1469.) The defendant approached and grabbed the purse from the passenger seat. The Court of Appeal held that these circumstances did not support a finding that the defendant stole the purse from the victim's person. "The evidence is undisputed that at the time defendant took Cirrencione's purse from her, the purse was lying on the car seat. The purse was not upon Cirrencione's person, attached to her in any way, or carried by her. Cirrencione had laid the purse aside, although it remained in her immediate presence and was under her actual control. Under the authority of *McElroy*, we are compelled to conclude that the evidence is insufficient as a matter of law to sustain the conviction for grant theft person . . . ." (*Id.* at pp. 1471–1472.) *Williams* is also inconclusive, for, unlike the situation here, the victim laid the purse aside voluntarily. No evidence existed that the defendant in *Williams* did anything to separate the purse from the victim's person.

Three cases that sustained grand theft convictions are quite close on point. Two found grand theft from the person when the defendant first attempted to take the property from the person but the property became separated before he gained possession. In *People v. Carroll* (1912) 20 Cal.App. 41 [128 P. 4], three pickpockets, including the defendant, worked together to take a purse.

The defendant argued that the jury might have found that before the thieves actually gained possession of the purse, it had fallen to the ground, and that, if so, he could not be guilty of a taking from the person. The Court of Appeal disagreed. It held that even if the defendant had picked the purse off the ground, "the evidence shows that it could not have dropped to the ground but for the maneuvers of these men who were on the spot with the design to rob him. If the purse dropped, . . . and it was caused to drop by these men in their effort to commit the larceny, it was in point of law and common sense a taking from the person." (*Id.* at p. 46.)

Similarly, in *People v. Smith* (1968) 268 Cal.App.2d 117 [73 Cal.Rptr. 859], the defendant and an accomplice, Glasco, attempted to take a wallet from the victim's pants. A struggle ensued, during which the pants were torn off the victim and the wallet fell to the street. The accomplice picked up the wallet and pants. The Court of Appeal held that these facts supported a finding of theft of the pants and the wallet from the person "even though Glasco picked them up from the street; clearly it was because of the conduct of defendant and Glasco in scuffling with [the victim] . . . that the wallet and the pants fell to the street where Glasco immediately took possession of them . . . ." (*Id.* at p. 120.)

Somewhat different is *In re Eduardo D.* (2000) 81 Cal.App.4th 545 [97 Cal.Rptr.2d 38] (*Eduardo D.*). In that case, the juvenile assaulted the victim, Manuel G., because the victim did not want to join the juvenile's "crew." (*Id.* at p. 547.) The victim fled, leaving behind his cap and backpack, which the juvenile then took. The Court of Appeal found the facts supported a finding of grand theft from the person. It distinguished its own earlier decision in *People v. Williams, supra,* 9 Cal.App.4th 1465. "This case is distinguishable from our prior decision in *Williams.* Manuel G. did not gladly and of his own free accord remove his backpack and cap, place them on the ground, or relinquish possession of these items. Rather, it was as the direct result of the minor's assault on Manuel G. that the cap and backpack were removed or fell to the ground. . . . The minor's initial actus reus or wrongful deed set the taking of Manuel G.'s possessions in motion. As a result, there was substantial evidence the theft was from the person of the victim." (*Eduardo D., supra,* at p. 548.)

The juvenile implicitly recognizes that, if correctly decided, *Eduardo D., supra,* 81 Cal.App.4th 545, controls this case. The victim here did not relinquish possession of his property of his own free accord any more than did the victim in *Eduardo D.* Rather, in both cases, the initial wrongful deed

set in motion the taking of the property from the victim's person. However, the juvenile argues, and the Court of Appeal found, that *Eduardo D.* was wrongly decided. The Court of Appeal here explained: "The flaw in the analysis of *In re Eduardo D.* is that it does not require a direct physical connection between the victim's person and the property taken at the time of the taking. The decision thus departs from the long-established rule of *McElroy* requiring the property taken be physically attached to, or at least connected in some fashion to, the victim in order to establish the 'from the person' element of grand theft person. Notably, there was no evidence in *In re Eduardo D.* the juvenile even intended to commit a theft crime. The juvenile assaulted the victim because the victim did not want to join the juvenile's crew. The facts of *In re Eduardo D.* suggest the juvenile only formed the intent to take the victim's property when he found the property lying on the ground after the victim managed to extricate himself from the fight and run away. At this point the victim's cap and backpack were no longer on, attached to, or for that matter, anywhere near, the victim's person. In these circumstances the property was not taken 'from the person' of the victim as *McElroy* requires."

■ The juvenile adds that a crime requires a union of act and intent. (Pen. Code, § 20; see *People v. McCoy* (2001) 25 Cal.4th 1111, 1117 [108 Cal.Rptr.2d 188, 24 P.3d 1210].) As applied to theft, this means that the defendant must have "the specific intent at the time of the taking to permanently deprive the owner of the property." (*People v. Edwards* (1992) 8 Cal.App.4th 1092, 1099 [10 Cal.Rptr.2d 821]; see *People v. Avery, supra,* 27 Cal.4th at p. 54.) The juvenile argues that, accordingly, the intent to steal must exist "at the time the property was detached from the person." We agree with the juvenile that the *Eduardo D.* court erred to the extent it upheld a finding of grand theft from the person absent evidence that the act that caused the property to become removed from the victim's person was committed with the intent to steal. Because a crime requires a union of act and intent, under the *Eduardo D.* facts, if the perpetrator had no intent to steal while the property was still on the victim's person, the perpetrator committed an assault followed by a theft, not a grand theft from the person. We disapprove *In re Eduardo D., supra,* 81 Cal.App.4th 545, to the extent it is inconsistent with this principle.

But this case is distinguishable. Here the evidence shows the juvenile intended to steal when the assault began. *People v. Smith, supra,* 268 Cal.App.2d 117, and *People v. Carroll, supra,* 20 Cal.App. 41, apply to this case, not *Eduardo D., supra,* 81 Cal.App.4th 545. The juvenile argues that in those cases the thieves intended to steal the property actually taken while it

was still on the victims' person. In this case, no evidence exists that the juveniles were even aware of the telephone's existence before they picked it up from the ground; therefore no evidence exists that they intended to steal *the telephone* until they observed it on the ground, i.e., until *after* it had become separated from the victim's person. This is a factual difference, but not one that mandates a different outcome.

■ In this case, there was evidence that, while the telephone was still on Mario's person, the juvenile asked him if he had any money. This evidence supports a finding that the juvenile and his cohort intended to steal property of some kind, even if not specifically the telephone, when the assault that caused Mario to drop the telephone began, i.e., when the telephone was on Mario's person. This generalized intent to steal at the time the telephone was on the victim's person satisfies the larcenous intent element of grand theft. The circumstance that the juveniles asked for money, which they did not succeed in obtaining, rather than specifically for the telephone, which they did eventually obtain, is not significant. The required mental state is an intent to steal, not an intent to steal specific property. In *People v. Campbell* (1976) 63 Cal.App.3d 599, 615 [133 Cal.Rptr. 815], the court found that a defendant who took a purse with the necessary intent was guilty of the grand theft of a firearm inside the purse. It analogized the situation to the doctrine of "transferred intent." (*Id.* at p. 615, fn. 11.) The doctrine of transferred intent holds that, assuming other required elements for murder are present, a person intending to kill is guilty of the murder of all persons actually killed. (*People v. Bland* (2002) 28 Cal.4th 313, 323–324 [121 Cal.Rptr.2d 546, 48 P.3d 1107].) "Whether one conceptualizes the matter by saying that the intent to kill the intended target transfers to others also killed, or by saying that intent to kill need not be directed at a specific person, the result is the same: assuming legal causation, a person maliciously intending to kill is guilty of the murder of all persons actually killed." (*Ibid.*) Similarly, those who intend to steal are guilty of the theft of all property they actually take.

■ In this case, the juveniles took the telephone from Mario's person with the intent to steal, although in two steps. First, they wrongly caused the telephone to become separated from the person; then they actually gained possession of it. The taking began with the initial assault, when the telephone was on the person, and only ended when the juveniles picked it up from the ground. Thus, and in response to the last paragraph of the dissent, the property *was* physically connected to the victim's person when the juvenile began to take it. The victim did not relinquish personal possession of the telephone voluntarily but only due to the juvenile's wrongful act. These facts pose a "threat of injury or death" to the victim just as surely as—and perhaps more than—some of the cases upholding a finding of theft from the person,

and thus satisfy the rationale for making theft from the person a more serious crime than ordinary theft. (*In re George B., supra,* 228 Cal.App.3d at p. 1092.)[2]

The juvenile also argues that even if we conclude that these facts constitute grand theft from the person, principles of ex post facto law prohibit us from applying the conclusion to him. We disagree. Although we may not retroactively apply an " 'unforeseeable judicial enlargement of a criminal statute,' " here "we are not retroactively enlarging a criminal statute but merely *interpreting* one." (*People v. Billa* (2003) 31 Cal.4th 1064, 1073 [6 Cal.Rptr.3d 425, 79 P.3d 542].) "Our holding is a routine interpretation of existing law, not an overruling of controlling authority or a sudden, unforeseeable enlargement of a statute." (*Ibid.*)

## III. Conclusion

We reverse the judgment of the Court of Appeal and remand the matter for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., and Corrigan, J., concurred.

**MORENO, J.,** Dissenting.—Law often is a complicated business, but that is not always the case. Sometimes the Legislature enacts a statute in simple language that can be easily applied. Unlike the majority, I think this is such a case. The majority concludes that the juvenile in this case committed grand theft from the person despite the fact that the stolen cell phone was taken from the ground, not from the person of the victim. I agree with the Court of Appeal that the juvenile committed an attempted robbery and petty theft, but did not commit a grand theft from the person of the victim.

Penal Code section 487, subdivision (c) states that theft is grand theft "When the property is taken from the person of another." This court has applied this statute by its terms for more than 100 years. *People v. McElroy* (1897) 116 Cal. 583 [48 P. 718], held that the defendant did not commit grand theft from the person by taking money from the pocket of the victim's pants, which the victim had removed and was using as a pillow. We held this was not grand theft from the person because the "garment from which the money was taken was not at the time on the person of [the victim] . . . ."

---

[2] The juvenile court found the juvenile committed grand theft from the person and only an *attempted* robbery. On these facts, however, it appears the court could have found the juvenile committed a *completed* robbery of the telephone. If this is correct, which we need not decide, this circumstance does not preclude the actual finding, which might have benefited the juvenile.

(*Id.* at p. 586.) The statute "was not intended to include property removed from the person and laid aside, however immediately it may be retained in the presence or constructive control or possession of the owner while so laid away from his person and out of his hands." (*Ibid.*)

The majority attempts to distinguish *McElroy* on the basis that, in the present case, the cell phone was in the victim's pocket when defendant assaulted him, relying upon the fact that the victim did not voluntarily lay the phone aside but rather dropped it as he fled. The majority concludes that "*McElroy* does not answer the question" posed in the present case and relies instead on other authority. (Maj. opn., *ante*, at p. 864.) But our seminal decision in *McElroy* cannot be so easily dismissed. If we examine the reasoning of our decision in *McElroy*, it is clear that the fact that the victim in the present case did not voluntarily lay the phone aside is a distinction without a difference.

We observed in *McElroy* that one reason that theft from the person is "treated as a much graver and more heinous offense than ordinary or common theft" is "because of the greater liability of endangering the person or life of the victim." (*People v. McElroy, supra*, 116 Cal. 583, 584.) After reviewing cases that had required that the stolen property had actually been on the person of the victim when it was taken, we stated: "In view of these authorities and the origin of the statute, we think its obvious purpose was to protect persons and property against the approach of the pickpocket, the purse-snatcher, the jewel abstracter, and other thieves of like character who obtain property by similar means of stealth or fraud, and that it was in contemplation that *the property shall at the time be in some way actually upon or attached to the person* . . . ; that it was not intended to include property removed from the person and laid aside . . . ." (*Id.* at p. 586, italics added.)

This reasoning applies equally whether the victim has voluntarily laid aside the property, or dropped it accidentally while fleeing. Once the property no longer is attached to the person of the victim, the theft does not entail the type of increased danger to the person or life of the victim that this statute was designed to address. As the facts of this case demonstrate, neither does such a crime involve stealth or fraud like that employed by a pickpocket or purse snatcher.

Although the facts in *McElroy* are not identical to those in the present case, the decision in that case remains controlling. We said in no uncertain terms that the statute means what it says, stating: "[t]he requirement of this offense is that [the property] shall be 'taken *from the person.*' " (*People v. McElroy*,

*supra,* 116 Cal. 583, 586, original italics.) The cell phone in the present case was not taken from the person of the victim, so the statute does not apply. It is as simple as that.

One Court of Appeal decision ruled that facts similar to those in the present case constituted a theft from the person, but the majority acknowledges that this case was wrongly decided. (*In re Eduardo D.* (2000) 81 Cal.App.4th 545 [97 Cal.Rptr.2d 38].) Eduardo D. accosted the victim in that case and punched him in the face, starting a fistfight. The victim eventually managed to pull away and fled, leaving behind his baseball cap and backpack. As he ran away, the victim saw Eduardo D. take the cap and backpack. The Court of Appeal ruled that the juvenile committed a theft from the person of the victim because the victim "did not gladly and of his own free accord remove his backpack and cap, place them on the ground, or relinquish possession of these items. Rather, it was as the direct result of the minor's assault on [the victim] that the cap and backpack were removed or fell to the ground." (*Id.* at p. 548.)

The majority correctly disapproves the decision in *Eduardo D.* but does so for the wrong reason, stating: "Because a crime requires a union of act and intent, under the *Eduardo D.* facts, if the perpetrator had no intent to steal while the property was still on the victim's person, the perpetrator committed an assault followed by a theft, not a grand theft from the person." (Maj. opn., *ante,* at p. 867.) *Eduardo D.* was wrongly decided not because of a lack of "union of act and intent," but rather because Eduardo D., like the juvenile in the present case, took the victim's property from the ground, not from the person of the victim.

Until the present case, *Eduardo D.* was the only published decision to hold that a theft from the person had occurred when the victim had not been in physical contact with the property when it was taken. (See, e.g., *People v. Huggins* (1997) 51 Cal.App.4th 1654 [60 Cal.Rptr.2d 177] [property touching the victim's foot]; *In re George B.* (1991) 228 Cal.App.3d 1088 [279 Cal.Rptr. 388] [property being carried in shopping cart pushed by the victim]; cf. *People v. Williams* (1992) 9 Cal.App.4th 1465 [12 Cal.Rptr.2d 243] [no grand theft from the person where purse was stolen from passenger seat of vehicle and the victim was not touching the purse].) As we held in *McElroy,* grand theft includes theft from the person of the victim because taking property that is physically connected to the victim increases the danger to the victim and thus warrants greater punishment. (*People v. McElroy, supra,* 116 Cal. 583, 584.) Therefore, the statute did not apply in *Eduardo D.,* and does not apply in the present case, because the property was not actually taken from the person of the victim.

Rather than be guided by our decision in *McElroy*, the majority relies upon two decisions by the Court of Appeal, which I believe are distinguishable. In *People v. Carroll* (1912) 20 Cal.App. 41 [128 P. 4], the defendant and two accomplices accosted the victim as he attempted to board a train; one accomplice blocked the victim's path while the other pushed him from behind, allowing the defendant to approach the victim. The victim heard the defendant say " 'I have got it' " and the victim found his pants pocket had been turned inside out and his wallet was missing. (*Id.* at p. 43.) The defendant argued on appeal that the trial court erred in refusing to instruct the jury on petty theft because the wallet may have fallen to the ground before the defendant took it. The court held: "In the case here the evidence leaves no rational inference that defendant picked up the purse from the ground and, even if he did so, the evidence shows that it could not have dropped to the ground but for the maneuvers of these men who were on the spot with the design to rob him. If the purse dropped, which is a mere surmise or possibility unsupported by any evidence, and it was caused to drop by these men in their effort to commit the larceny, it was in point of law and common sense a taking from the person. . . . *The condition of [the victim]'s pocket when he put his hand down to it showed that it had been pulled out, which must have been done by the defendant.* [The victim]'s testimony was that the defendant stood at his side and back of him when he said to his confederates, 'I have got it.'. . . We do not think the evidence showed that there was a reasonable probability or a reasonable possibility that the defendant picked up the purse from the ground or that it came out of [the victim]'s pocket otherwise than through defendant's agency." (*Id.* at p. 46, italics added.)

Thus, *Carroll* involved a garden-variety pickpocket. The defendant in *Carroll* took the wallet from the victim's pocket either by seizing the wallet directly or turning the victim's pocket inside out. This is precisely the type of situation at which the statute was aimed, and differs markedly from the circumstances in the present case.

The decision in *People v. Smith* (1968) 268 Cal.App.2d 117 [73 Cal.Rptr. 859], upon which the majority also relies, similarly involves facts that are very different from those in the present case. In *Smith*, "Glasco, defendant and [the victim] became involved in an argument; . . . Glasco grabbed [the victim] by the pants and a struggle involving all three persons ensued; while Glasco and defendant were 'scuffling' with [the victim] both of them were trying to get their hands into [the victim's] pocket; in the struggle [the victim's] wallet fell to the street and his pants were torn off of him; Glasco picked up the wallet and pants and, accompanied by defendant, carried them to the rear of a nearby hotel. Shortly thereafter the police arrived . . . . The back pockets of the pants had been torn down and the wallet was empty." (*Id.* at pp. 118–119.) The Court of Appeal held this was grand theft from the person, explaining that a witness saw "Glasco and defendant *put their hands in [the*

*victim's] pockets,* [the victim's] wallet and pants fall to the street, Glasco pick them up and with defendant run to the rear of the hotel. It cannot fairly be denied that both wallet and pants were taken from the person of defendant, even though Glasco picked them up from the street; clearly it was because of the conduct of defendant and Glasco in scuffling with [the victim], getting into his pockets and pulling on his pants, that the wallet and the pants fell to the street where Glasco immediately took possession of them, ending the struggle, and accompanied by defendant, ran away." (*Id.* at p. 120, italics added.) In *Smith,* therefore, the defendant reached into the victim's pocket and either removed the wallet, or ripped the pocket, causing the wallet to fall to the ground, where the defendant's accomplice could pick it up.

The majority broadly characterizes *Carroll* and *Smith* as cases in which "defendant first attempted to take the property from the person but the property became separated before he gained possession." (Maj. opn., *ante,* at p. 865.) This characterization is accurate, but it ignores the more important point that in both *Carroll* and *Smith* the defendant physically removed the property from the victim's person. The defendants in both *Carroll* and *Smith,* therefore, stole property from the person of the victim.

The present case is very different from *Carroll* and *Smith.* The juvenile in the present case did not reach into the victim's pocket. Rather, he simply caused the victim to run, which in turn presumably caused the cell phone to fall from the victim's pocket to the ground where the juvenile's accomplice could pick it up. In both *Carroll* and *Smith* the defendant took the property from the victim's person by reaching into the victim's pocket. Here, the juvenile took the property from the ground, not from the victim's person.

In concluding that the juvenile in the present case committed grand theft from the person when his accomplice picked up the victim's cell phone from the ground, the majority expands the statutory phrase "taken from the person of another" beyond its commonsense meaning as well as its historical bounds. Under the majority's interpretation, a grand theft from the person will occur whenever a thief "wrongly cause[s] the [stolen property] to become separated from the person" of the victim. (Maj. opn., *ante,* at p. 868.) In my view, this is an unwarranted expansion of the scope of the statute.

I prefer to apply the statute according to its plain, apparent meaning. If property is physically connected to the victim's person when the thief takes it, it is theft from the person. If not, it is not.