[No. C066487. Third Dist. Jan. 26, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
FERRIS LEE GETER, JR., Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II of the Discussion.

## COUNSEL

Kendall Simsarian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, David A. Rhodes and Jesse Witt, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HULL, Acting P. J.**—Defendant was convicted of grand theft from the person (Pen. Code, § 487, subd. (c); further undesignated section references are to the Penal Code) and was granted formal probation for five years. He appeals contending there is insufficient evidence to support the conviction and the trial court erred in instructing the jury on flight. We agree with the first contention and direct that the conviction be reduced to one for petty theft (§ 484). On the second contention, we conclude any error was harmless under the circumstances.

### FACTS AND PROCEEDINGS

On the evening of June 22, 2009, I.E. left work around 10:00 p.m. and drove to a Wells Fargo Bank to deposit approximately $125 in cash into his account. He parked in the bank's parking lot, walked up to an automatic teller machine (ATM), inserted his bank card and began his transaction. However, some of the cash he inserted into the ATM was rejected as too old and worn.

Meanwhile, defendant had followed I.E. into the Wells Fargo parking lot. Defendant got out of his car and approached I.E. while yelling at him in English. I.E., who had limited English proficiency, did not understand what defendant was saying. I.E. turned around to face defendant. He felt threatened and thought this might be a robbery.

According to I.E., defendant walked up to him and continued to yell. After 10 or 15 seconds of this, defendant hit I.E. in the face and pushed him away from the ATM. I.E., who is significantly smaller than defendant, fled to his car. From there, I.E. observed defendant walk up to the ATM, where I.E. had left his bank card and cash. After 10 or 15 seconds, defendant departed.

Defendant walked back to his car, got in and drove off. I.E. then returned to the ATM and found his card but none of the cash that had been rejected by the machine. The receipt produced by the ATM for his transaction showed that he had successfully deposited only $20.

Defendant admitted being present in the Wells Fargo parking lot but denied that he went there to rob I.E. He testified that his girlfriend worked with I.E. and had complained to defendant about I.E. "creeping her out" when defendant was not around. Each time defendant picked his girlfriend up from work, I.E. would give defendant "weird looks." On June 22, 2009, defendant picked his girlfriend up from work and, as he was driving away, I.E. cut him off on the road. This was the "last straw" for defendant, and he followed I.E. into the Wells Fargo parking lot to confront him.

Defendant acknowledged yelling at I.E. as he approached him at the ATM. According to defendant, they got in each other's face and were both yelling. When I.E. called defendant a name, they began hitting each other and "tussling." I.E. eventually ran off. At that point, defendant grabbed I.E.'s money from the ATM and taunted him with it to try and get I.E. to come back and fight. When I.E. refused to return, defendant tore up the money, returned to his car and departed.

Defendant acknowledged that, the day after the incident, he told a police officer he tore up the money as he drove away from the bank. Defendant claimed he had been mistaken at the time. Defendant further acknowledged a surveillance video of the incident did not show him tearing up the money at the ATM. Defendant then testified he tore up the money as he was walking to his car.

Defendant was charged with robbery. The jury found defendant not guilty of robbery but guilty of the lesser included offense of grand theft from the person. The trial court thereafter suspended imposition of sentence and granted defendant formal probation for five years, on the condition he spend six months in county jail.

DISCUSSION

I

Sufficiency of the Evidence

Defendant was convicted of violating section 487, subdivision (c), which defines grand theft to include theft "[w]hen the property is taken from the person of another." Defendant contends there is insufficient evidence the theft

of the victim's money was from his person. Defendant argues the victim had already put his money in the ATM before defendant arrived. Hence, it was no longer on his person.

In reviewing the sufficiency of the evidence supporting a conviction, we view the evidence in the light most favorable to the prosecution and determine if a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. (*People v. Davis* (1995) 10 Cal.4th 463, 509 [41 Cal.Rptr.2d 826, 896 P.2d 119].)

■ The seminal case on grand theft from the person is *People v. McElroy* (1897) 116 Cal. 583 [48 P. 718], where the defendant took $17 from a wallet in the pocket of the victim's trousers while the victim was asleep and was using the trousers as a pillow. The California Supreme Court reversed the defendant's conviction for grand theft from the person, concluding the defendant had not taken the property from the person of the victim. (*Id.* at pp. 586–587.) According to the court, the obvious purpose of making theft from the person of another a more serious crime "was to protect persons and property against the approach of the pickpocket, the purse-snatcher, the jewel abstracter, and other thieves of like character who obtain property by similar means of stealth or fraud, and that it was in contemplation that the property shall at the time be in some way actually upon or attached to the person, or carried or held in actual physical possession—such as clothing, apparel, or ornaments, or things contained therein, or attached thereto, or property held or carried in the hands, or by other means, upon the person; that it was not intended to include property removed from the person and laid aside, however immediately it may be retained in the presence or constructive control or possession of the owner while so laid away from his person and out of his hands. . . . Had the [L]egislature intended that the offense should include instances of property merely in the immediate presence, but not in the manual possession about the person, it would doubtless have so provided, as it has in defining robbery. Robbery is defined as 'the felonious taking of personal property in the possession of another from his person or *immediate presence*,' etc. (Pen. Code, [§] 211), while the requirement of this offense is that it shall be 'taken *from the person*.' " (*People v. McElroy, supra*, 116 Cal. at p. 586.)

Since *McElroy*, a number of decisions have considered the question of when stolen property can be considered to have been in the possession of

the victim for purposes of section 487, subdivision (c), with varying results. In *People v. Huggins* (1997) 51 Cal.App.4th 1654 [60 Cal.Rptr.2d 177] (*Huggins*), the victim was sitting on a chair with her purse on the floor against her foot when the defendant snatched the purse. The Court of Appeal found the purse had been taken from the person of the victim, based on "the crucial fact that the purse was at all times in contact with the victim's foot." (*Id.* at p. 1657.)

In *In re George B.* (1991) 228 Cal.App.3d 1088 [279 Cal.Rptr. 388] (*George B.*), the minor's accomplice "stole a bag of groceries from a shopping cart as the victim was pushing the cart in the parking lot of a market." (*Id.* at p. 1090.) This court concluded such facts supported a finding that the groceries had been taken from the person of the victim. (*Id.* at p. 1093.)

In *People v. Williams* (1992) 9 Cal.App.4th 1465 [12 Cal.Rptr.2d 243] (*Williams*), the victim placed groceries in the back of her car, "threw her purse onto the front passenger seat," and then sat down in the driver's seat. The defendant approached, pushed the victim back in her seat and grabbed the purse. (*Id.* at p. 1469.) The Court of Appeal held these facts did not support a finding that the purse had been taken from the victim's person. (*Id.* at pp. 1471–1472.)

In *In re Eduardo D.* (2000) 81 Cal.App.4th 545 [97 Cal.Rptr.2d 38] (*Eduardo D.*), disapproved on other grounds in *In re Jesus O.* (2007) 40 Cal.4th 859, 867 [55 Cal.Rptr.3d 523, 152 P.3d 1100] (*Jesus O.*), the minor assaulted the victim, Manuel G., because the victim did not want to join the minor's "crew." (*Eduardo D.*, at p. 547.) The victim fled, leaving behind his cap and backpack, which had been removed or fallen to the ground during the assault. The minor took the cap and backpack. The Court of Appeal concluded these facts supported a finding of grand theft from the person.

In *Jesus O.*, the California Supreme Court once again weighed in on the meaning of theft from the person. In that case, the court found a violation of section 487, subdivision (c), where the minor and another juvenile assaulted the victim, the victim dropped his cell phone while fleeing, and the minor's cohort picked up the phone. (*Jesus O., supra*, 40 Cal.4th at pp. 861–862.) Like *Eduardo D.*, the court indicated it did not matter that the property was no longer in the victim's possession when it was taken by the minor. What mattered was that the property was in the victim's possession at the time of the assault. (*Jesus O.*, at pp. 868–869.)

However, the high court expressly disapproved *Eduardo D.* to the extent that case can be read to mean the defendant can be found guilty of grand theft from the person even if he did not form the specific intent to rob the victim at the time of the assault, i.e., at the time the property was still in the victim's possession. (*Jesus O., supra*, 40 Cal.4th at p. 867.) In *Eduardo D.*, the evidence suggested the minor assaulted the victim because he would not join the minor's gang, not in order to rob him. (*Eduardo D., supra*, 81 Cal.App.4th at p. 547.) By contrast, in *Jesus O.*, the evidence supported a finding that the minor assaulted the victim for the specific purpose of robbing him. (*Jesus O.*, at p. 867.)

■ As in both *Eduardo D.* and *Jesus O.*, it does not matter here that the victim was no longer in possession of his money when it was taken by defendant. Defendant forced the victim to flee without his money. The question here is whether, as in those two cases, the property was still on the victim's person when defendant began his assault. Although *Jesus O.* also cautions that the evidence must further show defendant intended to steal from the victim when he assaulted him, defendant does not raise that issue here.

The People contend the victim's money was still in his possession at the ATM when defendant approached. According to the People, the victim "then let go of the money and was struck and pushed by [defendant]." The victim fled, and defendant "grabbed the money from the same spot where [the victim]'s hand had been when [defendant] approached."

The evidence presented at trial does not support the People's version of the events. I.E. testified that he put money into the ATM but the $100 bill came back out because it was too old and worn. At that point, defendant arrived and approached I.E. I.E. turned to confront defendant and defendant was there 10 to 15 seconds before he commenced the assault. There is no indication in the victim's testimony that, after the ATM rejected his $100 bill, he grabbed hold of the bill or put his hand back up to the ATM where the money came back out.

The People contend the victim's possession of the cash when the assault commenced can be seen in a surveillance video introduced at trial. We have reviewed that video. It shows the victim holding money before defendant arrived and reaching toward the ATM around the time defendant got there. However, it does not show that the victim was holding any money when the assault commenced.

During deliberations, the jury sent out the following question: "per 1801 paragraph 2 is the ATM considered theft from a person. Is the ATM a container? Can this be considered as grand theft?" This question refers to CALCRIM No. 1801, which defines the degrees of theft, and states: "Theft of property from the person is grand theft, no matter how much the property is worth. Theft is *from the person* if the property taken was in the clothing of, on the body of, or in a container held or carried by, that person." Hence, it appears that one or more of the jurors did not view the evidence as establishing the money was in the victim's hand, as the People assert, but rather was still in the ATM.

■ The question thus is whether this matter is more like *George B.*, where the minor snatched a bag of groceries from the victim's cart, and *Huggins*, where the defendant snatched a purse on the floor against the victim's leg, or *Williams*, where the defendant snatched a purse from the passenger seat of the victim's car. We believe it is more like the latter. In *George B.*, the victim was still holding the grocery cart that contained the bag of groceries. In *Huggins*, the victim's purse was still in contact with her. Here, I.E. had voluntarily given up possession of the $100 bill to the ATM. It is only because the machine rejected the bill that it remained within his reach. However, there is no evidence he ever regained physical possession of the bill. Thus, defendant's conviction for grand theft from the person cannot stand.

The record nevertheless establishes that defendant is guilty of petty theft under section 484. The jury was instructed on petty theft and received verdict forms on that offense. Defendant acknowledges he took the victim's money, claiming only that he thereafter tore it up and threw it away. Defendant's conviction must therefore be reduced to a violation of section 484.

II

*Flight Instruction**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is reversed and the matter is remanded to the trial court with directions to vacate defendant's conviction for grand theft and to enter a new

*See footnote, *ante*, page 1430.

verdict finding defendant guilty of petty theft and to resentence defendant on this lesser offense.

Robie, J., and Murray, J., concurred.