Filed 6/17/13  P. v. Shaw CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G046900 |
| v. | (Super. Ct. No. 11NF0274) |
| ELMORE DEAN SHAW, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Sheila F. Hanson, Judge.  Affirmed.

Elizabeth Garfinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Ifeolu E. Hassan, Deputy Attorneys General, for Plaintiff and Respondent.

Appellant was convicted of robbing Randall Yerton after Yerton refused to go through with a drug deal appellant had proposed to him. Appellant contends the trial court prejudicially erred in failing to instruct on the lesser included offense of grand theft person and on the claim-of-right defense. We disagree and affirm the judgment.

FACTS

During the summer of 2010, Yerton occasionally purchased small amounts of marijuana from appellant. Most of the transactions took place near the motel where Yerton lived in Anaheim. Yerton would pay appellant at the time appellant tendered the marijuana, and they never had any problems doing business that way.

However, one day in October 2010, appellant asked Yerton to give him $40 up front for some marijuana. Against his better judgment, Yerton gave appellant the money expecting appellant would then go get the marijuana and give it to him. But appellant didn't deliver the goods that day, nor did he return any of Yerton's phone calls over the next few weeks. Yerton felt burned and regretted his decision to give appellant his money up front.

On November 29, 2010, appellant called Yerton and told him he could get him half a pound of marijuana in Compton for $200. Yerton said he was interested, but he told appellant he wanted to finish up their old business first: He wanted appellant to give him the $40 worth of marijuana he had already paid for before they did any more deals together.

Appellant said he understood. He told Yerton to meet him at the 99¢ Store near his motel, and he would give him the marijuana he owed him. Then, if Yerton had the $200, they could go get the additional half pound in Compton. Yerton said he had the money, but when he left his motel room he only had a few dollars on him. He had no intention of giving appellant any more money or going to Compton with him. The only reason he said he had the $200 was so appellant would meet with him and give him the marijuana he already owed him.

2

Yerton's plan did not work out as he expected it to. Upon walking over to the 99¢ Store, he saw appellant sitting in his car near the front of the store. Appellant motioned for him to get in the car, but Yerton merely crouched inside the passenger door without getting all the way inside the vehicle. He told appellant he wanted the marijuana he was owed, and appellant gave him a container of marijuana that looked like it was from a medical marijuana clinic. Yerton inspected the container and noticed it appeared to have less marijuana than what he was owed. When he said the container looked "short," appellant assured him he would make it up to him on another deal.

Yerton wasn't happy, but he told appellant he would settle for the container and call it even. He also told appellant he wasn't interested in doing the Compton deal, which made appellant very upset. Appellant said the Compton deal was "vital" and vehemently implored Yerton for money. While appellant was doing so, Yerton noticed a bulge under his shirt. Suspecting the bulge was a gun, Yerton told appellant he did not have any money and began backing away from the car.

It is unclear where the container of marijuana was at that time. Yerton testified he may have tossed it on the passenger seat or it may have fallen onto the ground, but either way he did not have it.

Fearful of appellant, Yerton entered the 99¢ Store for protection. When appellant followed him into the store, he told him to leave him alone and pointed out they were being videotaped by the store's surveillance camera.[1] Yerton also told the people in the store appellant had a gun and to call 911, but no one did so. During the incident, appellant yelled out, "He's got my marijuana" and demanded money from Yerton. However, he eventually left the store.

Keeping an eye out for appellant, Yerton left the store soon thereafter. First, he walked over to a nearby food store, and then about 30 minutes later, he decided

---

[1] The surveillance tape of the incident was played for the jury.

3

to head home. As he was about to enter the front gate of his motel, appellant jumped out from behind the bushes and attacked him. He floored Yerton with a punch to the head, and when Yerton hit the sidewalk, his cell phone slid forward on the ground ahead of him. Appellant picked up the phone and punched Yerton in the head again for good measure. Then he began rifling Yerton's pockets.[2]

Hearing the ruckus, a motel worker ran to the scene. At that point, appellant fled, and the worker took Yerton inside and called 911. Yerton was feeling groggy, "like he had a concussion," when he spoke to the dispatcher. However, he downplayed the incident and said he did not need any medical care. The only thing he reported stolen was his cell phone. When the police arrived, he told them about appellant attacking him, but he did not say anything about their marijuana dealings.

Later that night, Yerton realized the money he had on him before the attack, "a couple dollars," was missing. Although he did not see appellant take the money, he suspected he did so while he was going through his pockets. When the police conducted a follow-up interview with appellant a week after the attack, he told them about the pocket money. But again, he did not say anything about marijuana. It wasn't until the police interviewed Yerton for a third time that he "came clean" and told them about his prior dealings with appellant.

Appellant was charged with one count of robbery. The charge was premised on the theory appellant unlawfully took Yerton's cell phone after knocking him down. Although there was also evidence appellant rummaged through Yerton's pocket and took a few dollars from him, the prosecution elected to use the cell phone as the basis for the robbery charge. Accordingly, the jury was instructed, "The property the defendant is accused of taking is the item of property shown falling on the sidewalk in the video. You may not convict the defendant unless you all agree the defendant took that

---

[2] This incident was also caught on tape and played for the jury.

4

item." The jury was also instructed on the lesser included offenses of attempted robbery and petty theft.

In closing argument, the defense argued that when Yerton met appellant in his car on the night in question, Yerton not only inspected the container of marijuana appellant gave him, he also kept it when he left the vehicle. According to defense counsel, appellant simply wanted to get the marijuana back when he followed Yerton into the 99¢ Store and attacked him outside his motel. While admitting appellant assaulted Yerton that night, the defense claimed the object appellant picked up after the assault was his *own* cell phone, not Yerton's. Therefore, he was not guilty of robbery. However, the jury convicted appellant as charged, and the court sentenced him to two years in prison. This appeal followed.

## I

Appellant contends the trial court prejudicially erred in failing to instruct the jury sua sponte on the lesser included offense of grand theft person. (Pen. Code, § 487, subd. (c).) Assuming such an instruction was warranted, we find its omission was harmless under the circumstances of this case.

"'"'The trial court has a sua sponte duty to instruct on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present and there is evidence that would justify a conviction of such a lesser offense.'" [Citation.] As [our Supreme Court has] explained, instructing on lesser included offenses shown by the evidence avoids forcing the jury into an 'unwarranted all-or-nothing choice' [citations] that could lead to an unwarranted conviction." (*People v. Hughes* (2002) 27 Cal.4th 287, 365.)

Appellant argues there is substantial evidence that when he attacked Yerton, he did not intend to steal his cell phone, which was the alleged object of the robbery. Rather, he was merely trying to get his marijuana back or get money from Yerton, and he only took Yerton's cell phone as an afterthought. And if that was the

5

case, then he was only guilty of grand theft person. (See *In re Jesus O.* (2007) 40 Cal.4th 859 [upholding conviction for grand theft person where defendant attacked victim to get his money but ended up only taking his cell phone].)

Assuming there was sufficient evidence to support an instruction on grand theft person, any error in failing to instruct on that offense was harmless because the factual question posed by that instruction was resolved against appellant under other properly given instructions. (*People v. Elliot* (2005) 37 Cal.4th 453, 475.) As noted above, the jury was not presented with an all-or-nothing choice between the charged offense of robbery and acquittal. Rather, the trial judge instructed on the lesser included offenses of attempted robbery and petty theft. The petty theft instruction allowed the jury to convict appellant of that lesser offense if it believed he formed the intent to steal Yerton's cell phone *after* he attacked him. However, by convicting appellant of robbery, the jury obviously did not believe that was the case. So, the failure to instruct on grand theft person could not have prejudiced appellant.

Despite the petty theft instruction, appellant contends it is not likely the jury would have convicted him of that minor offense, given the amount of force he used against Yerton. In other words, he contends petty theft was not a viable alternative for the jury because it did not comport with his overall level of culpability. But if you factor in the assault, neither did grand theft person.

The bottom line is this: "Under the instructions given, the jury was not put to an improper all-or-nothing choice, but necessarily rejected the theory of after-acquired intent when it found [appellant] guilty of robbery rather than petty theft." (*People v. Dominguez* (1992) 11 Cal.App.4th 1342, 1353.) Therefore, "[a]ny error in failing to instruct on grand theft was harmless. [Citation.]" (*Ibid.*)

## II

Appellant also contends the trial court prejudicially erred in failing to instruct the jury sua sponte on the claim-of-right defense. Again, we disagree.

6

"'It has long been the rule in this state and generally throughout the country that a bona fide belief, even though mistakenly held, that one has a right or claim to the property negates felonious intent. [Citations.] A belief that the property taken belongs to the taker [citations], or that he had a right to retake goods sold [citation] is sufficient to preclude felonious intent. Felonious intent exists only if the actor intends to take the property of another without believing in good faith that he has a right or claim to it. [Citation.]' [Citation.]" (*People v. Barnett* (1998) 17 Cal.4th 1044, 1143.)

Appellant argues the trial court should have instructed the jury on this defense because the record indicates that, when he assaulted Yerton, he was "trying to get his own marijuana back." The argument has several flaws.

First, the claim-of-right defense does not apply where the claim is based on an illegal transaction, such as drug dealing. (*People v. Tufunga* (1999) 21 Cal.4th 935, 938-939; *People v. Johnson* (1991) 233 Cal.App.3d 425, 456-458.) Appellant claims the marijuana he was allegedly trying to get back from Yerton was medical marijuana that he had a legal right to possess. However, even if that was the case, the record shows appellant tendered the marijuana to Yerton to satisfy an obligation arising from a prior illegal transaction, making the claim-of-right defense inapt as a matter of law.

Second, appellant was not accused of taking marijuana from Yerton. Instead, he was accused of taking the object that fell on the sidewalk when Yerton hit the ground. The prosecutor argued the object was Yerton's cell phone, and the defense argued it was appellant's own cell phone. No one argued, and there was no evidence, the object was marijuana. Therefore, appellant's claim fails on factual grounds as well. (See *People v. Barton* (1995) 12 Cal.4th 186, 195 [trial court's duty to instruct on a particular defense only applies "'if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense"].)

Finally, although the court did not specifically instruct on the claim-of-right defense, that defense was effectively encompassed in the court's other instructions. To

wit, the court told the jury that in order to convict appellant of robbery, the prosecution had prove beyond a reasonable doubt that appellant "took property that was not his own." Thus, if, as defense counsel argued, appellant simply took his own cell phone after assaulting Yerton, he would not be guilty of robbery. By convicting appellant of that offense, the jury necessarily rejected this theory. Therefore, any error in failing to instruct on the claim-of-right defense was surely harmless. (*People v. Demetrulias* (2006) 39 Cal.4th 1, 22-24 [failure to instruct on claim-of-right defense deemed harmless where legal principal of lack of felonious intent was covered by other jury instructions].)

DISPOSITION

The judgment is affirmed.


BEDSWORTH, ACTING P. J.

WE CONCUR:


FYBEL, J.


IKOLA, J.


8