Filed 3/20/14  P. v. Reid CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G049219 |
| v. | (Super. Ct. No. SWF029045) |
| GARNETT JUNIOR REID, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Riverside County, Dennis A. McConaghy, Judge.  Affirmed, as modified.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Theodore M. Cropley, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant Garnett Junior Reid of felony elder abuse (Pen. Code, § 368, subd. (b)(1); all further undesignated statutory references are to this code; count 1), attempted robbery (§§ 211, 664; count 2), "grand theft person" (§ 487, subd. (c); count 3), felony evasion (Veh. Code, § 2800.2; count 4), and felony child endangerment (§ 273a, subd. (a); count 5). It also found true that in committing counts 1 and 2 defendant personally inflicted great bodily injury on the victim. (§§ 12022.7, subd. (c), 1192.7, subd. (c)(8).) Although the jury acquitted defendant of assault on a police officer by means of force likely to produce great bodily injury and assault with a deadly weapon (counts 6 and 7), it found him guilty of the lesser included offense of simple assault. After finding true defendant had served two prior prison terms (§ 667.5, subd. (b)), the court sentenced defendant for 13 years, 8 months.

Defendant contends substantial evidence does not support the great bodily injury enhancements and his convictions for elder abuse and grand theft. If the great bodily enhancements are reversed, he claims he is entitled to additional presentence conduct credits and a remand for the court to consider placing him on probation. He also argues the court erred by not sua sponte instructing the jury on misdemeanor elder abuse or alternatively that his counsel was ineffective for failing to request it. Further, he asserts section 654 bars separate sentences on counts 4 and 5, and counts 3 and 4. We agree section 654 precludes multiple sentences on counts 4 and 5 and order the sentence on count 4 stayed. We also agree with defendant's final contention that the court's oral order that defendant to "have no contact with any of the witnesses or the victims" was unauthorized and strike the order of protection. As modified, the judgment is affirmed.

FACTS

In August 2009, 85-year-old Mildred Hare parked her car in a Stater Brother's parking lot. As she walked toward the store, defendant, who was taller than

Hare and in his mid-20's, ran up and grabbed her purse. During their "tug-a-war" over the purse, both "pull[ed] so hard" that the straps on defendant's side broke. Because of "how hard [they] were struggling," Hare fell backwards onto the hard asphalt with great momentum, hitting her head, fracturing her pelvis, and injuring her arms and legs. She was bed-ridden for six to eight weeks, confined to a wheelchair for the next two and a half months, and had to use a walker for three more months.

Later that morning, Jenna Hickok parked her car in the parking lot of a Target store located a short distance from the Stater Brothers where defendant had attempted to take Hare's purse. Hickok got out of her car and placed her baby's diaper bag, containing her purse, keys, and other items, into the main compartment of a shopping cart. She had just turned the cart and was either in the process of buckling her baby into the cart or right after she had done so when defendant came over, grabbed the diaper bag and ran off. Hickok's hands were not on the cart at the time.

Defendant jumped into a car being driven by his wife. At a nearby Chevron station, they exchanged places. With police following and his four-year-old son in the back seat, defendant drove erratically on city streets and freeways. At one point, he drove directly at several law enforcement vehicles before police disabled his car.

DISCUSSION

1. *Sufficiency of the Evidence*

"'In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] Reversal on this ground is unwarranted unless it appears "that upon no hypothesis whatever is there

3

sufficient substantial evidence to support [the conviction]." "" (*People v. Wilson* (2010) 186 Cal.App.4th 789, 805.)

### a. Great Bodily Injury Enhancements

Under section 12022.7, subdivision (c), "[a]ny person who personally inflicts great bodily injury on a person who is 70 years of age or older, other than an accomplice, in the commission of a felony or attempted felony shall be punished by an additional and consecutive term of imprisonment in the state prison for five years." Defendant admits Hare sustained great bodily injuries but contends insufficient evidence supports his convictions under that statute because he "did not personally inflict them" in that he "did not hit her, push her down, drag her down or knock her down," or "cut the strap or let go of the purse knowing that she would fall." We are not persuaded.

Defendant relies primarily on *People v. Jackson* (2000) 77 Cal.App.4th 574 (*Jackson*), which held that when "the victim's injury does not result from direct physical contact by the defendant, . . . section 273.5 is not violated." (*Id*. at p. 575; see also *People v. Rodriguez* (1999) 69 Cal.App.4th 341, 347 ["To 'personally inflict' an injury is to directly cause an injury, not just to proximately cause it"].) In *Jackson*, the defendant pushed his girlfriend against a car parked on the street. The girlfriend's testimony established her traumatic injuries occurred when she tripped and fell over a curb while attempting to flee from the defendant. (*Jackson*, at p. 576.) On appeal, the defendant claimed the evidence was not sufficient to prove he violated section 273.5 "because the victim's injuries resulted from her own movements." (*Jackson,* at p. 576.) After examining the language and legislative history of section 273.5, *Jackson* held the evidence failed to prove the defendant "'inflicted corporal injury on his girlfriend within the meaning of . . . section 273.5" because that statute "is not violated unless the corporal injury *results from a direct application of force on the victim by the defendant*." (*Jackson*, at p. 580, italics added.) Significantly, however, it explained that "[i]f the

4

victim fell *as a direct result of the blows inflicted by* [*the defendant*], we would conclude [he] inflicted the corporal injury she suffered in the fall." (*Ibid.*, italics added.)

In this case, substantial evidence establishes that Hare's injuries resulted from defendant's "direct application of force" (*Jackson*, *supra*, 77 Cal.App.4th at p. 580), specifically the fact he was "pulling so hard" that the purse strap on his side of the "tug-a-war" broke, causing Hare to fall back with great momentum.

Moreover, *Jackson* did not involve the interpretation of section 12022.7 but rather "section 273.5, which includes a specific definition of injury that requires the use of physical force" (*People v. Warwick* (2010) 182 Cal.App.4th 788, 794 (*Warwick*) [citing former § 273.5, subd (c), now § 273.5, subd. (d)].) In *Warwick*, this court disagreed with the defendant that she did not personally inflict great bodily injury on her child under section 12022.7, subdivision (d) because she passively failed to act and did not apply force. (*Warwick*, at pp. 793-795.) We relied on *People v. Cross* (2008) 45 Cal.4th 58, which, in interpreting section 12022.7, subdivision (a), an enhancement with nearly identical language to subdivisions (c) and (d), "held that nonforcible but unlawful sexual conduct with a minor supports a finding of great bodily injury, and specifically rejected the view advanced here: 'To the extent defendant argues that great bodily injury invariably requires the application of physical force to the victim in order to cause great bodily injury, we reject that view. "A plain reading of . . . section 12022.7 indicates the Legislature intended it to be applied broadly" [citation], and therefore the statute itself sets out the only criminal offenses — murder, manslaughter, arson, and unlawfully causing a fire, each of which incorporates enhanced sentencing for such injury — that are not subject to a finding of great bodily injury [citation].' [Citation.] Further, the court noted: '[T]he meaning of the statutory requirement that the defendant *personally inflict* the injury does not differ from its nonlegal meaning. Commonly understood, the phrase "personally inflicts" means that someone "in person" [citation], that is, directly and not

5

through an intermediary, "cause[s] something (damaging or painful) to be endured.""'" (*Warwick*, at p. 794.)

Applying this definition, we rejected the defendant's claim that "'affirmative action' is required" and held that, in any event, her actions were affirmative in that they "were direct and ineffectual — defendant's actions after her child's birth directly caused his injuries, including only partially covering him with a blanket rather than properly swaddling him. This led directly to his hypothermia and nearly caused his death. Effectively sending her mother away from the door was also affirmative action that kept the baby from getting help for several hours. Under either definition, defendant 'personally inflicted' great bodily injury on her child." (*Warwick*, *supra*, 182 Cal.App.4th at p. 795.) Similarly, here, defendant affirmatively acted in struggling so hard with Hare that the strap of her purse broke, causing her to fall with great momentum.

During oral argument, defendant argued the recent case of *People v. Wilson* (2013) 219 Cal.App.4th 500 supports his position. It does not. The court there held that a trial court may determine the truth of a defendant's prior convictions for a sentencing enhancement where the issue does not involve a factual dispute, but "whether the offense involved *personal infliction*" could not be "determine[d] from the record of conviction . . . without resolving a factual dispute" (*id*. at p. 511), which the court had no power to do under California law (*id*. at p. 513). In so holding, it noted the California Supreme Court has held "the phrase 'personally inflicts great bodily injury' in the analogous context of section 12022.7 . . . applies 'only to a person who himself inflicts the injury'" i.e., ""'without the intervention of another'"" or "'through an intermediary,'" (*id*. at p. 512), which is how defendant acted here.

Having determined substantial evidence supports the great bodily injury enhancements attached to counts 1 and 2, we need not address defendant's claims his presentence credits may not be limited under section 2933.1 and that the case should be remanded for the court to determine at resentencing whether he is entitled to probation.

6

### b. Felony Elder Abuse

Under section 368, subdivision (b)(1), elder abuse occurs whenever "[a]ny person who knows or reasonably should know that a person is an elder or dependent adult and who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any elder . . . to suffer, or inflicts thereon unjustifiable physical pain or mental suffering . . . ." Defendant argues "he did not personally inflict" injuries on Hare and that this "typical grab and go purse snatch" did not involve "a context or set of circumstances where great bodily injury or death were likely or expected." We have rejected his first contention and the jury disagreed with the second.

Because "[s]ection 368 is patterned on the felony child abuse statute . . . it is appropriate to review decisions interpreting [that statute] in addressing issues concerning the scope of section 368." (*Roman v. Superior Court* (2003) 113 Cal.App.4th 27, 35.) "'[L]ikely' . . . means a substantial danger, i.e., a serious and well-founded risk, of great bodily harm or death." (*People v. Wilson* (2006) 138 Cal.App.4th 1197, 1204.) "'Great bodily harm refers to significant or substantial injury and does not refer to trivial or insignificant injury.'" (*People v. Cortes* (1999) 71 Cal.App.4th 62, 80.) A victim need not actually suffer great bodily harm or injury, but any injuries actually sustained are relevant to whether the circumstances were likely to produce great bodily injury. (*Ibid.*)

Here, the jury reasonably could have concluded from the evidence that the force applied by defendant was "likely to produce great bodily harm" within the meaning of section 368, subdivision (b)(1). First, the injuries actually suffered were significant, as defendant concedes. Second, Hare testified defendant was "pulling so hard" that the purse straps on his side snapped, causing her to fall backwards on a hard asphalt parking lot with such momentum that she fractured her pelvis and sustained other injuries. Finally, at 85 years old, Hare was particularly susceptible to injury in the event of a fall (see *People v. Racy* (2007) 148 Cal.App.4th 1327, 1333 (*Racy*) ["as a matter of common

7

knowledge, [74] is an age that carries with it an increased risk of bone fractures from a fall"]), particularly when targeted by a man taller and much younger than her.

Asserting "unjustifiable physical pain" is ambiguous, defendant claims statutory construction principles dictate a reversal because the history and purpose behind section 368 indicate it does not apply to "criminalize as elder abuse the unlawful force used during a street crime simply because the victim is elderly." But as defendant acknowledges, the first step to statutory construction is to examine "'the statutory language because it is generally the most reliable indication of legislative intent. [Citation.] If the statutory language is unambiguous, we presume the Legislature meant what it said, and the plain meaning of the statute controls.'" (*Lopez v. Superior Court* (2010) 50 Cal.4th 1055, 1063, disapproved on another ground in *People v. Harrison* (2013) 57 Cal.4th 1211, 1230, fn. 2.) The phrase "unjustifiable physical pain" is not ambiguous but rather is "pain or suffering that is not reasonably necessary or is excessive under the circumstances." (CALCRIM No. 830; see also *People v. Whitehurst* (1992) 9 Cal.App.4th 1045, 1050 ["unjustifiable" is "when it is not warranted by the circumstances, i.e., not necessary, or . . . although warranted, was excessive"].) This is a question of fact for the jury. (*People v. Whitehurst*, at p. 1050.) Although the court apparently did not instruct the jury with that particular language, the use notes for CALCRIM No. 830 states the definition for "unjustifiable physical pain" need only be given "on request . . . if there is a question about the necessity for or the degree of pain or suffering." (Judicial Council of Cal. Crim., Jury Instns. (2013) Bench Notes to CALCRIM No. 830, at p. 552.) Here, there was neither a request nor a question.

c.  *"Grand Theft Person"*

A person commits grand theft by, among other means, taking property "from the person of another." (§ 487, subd. (c); *In re Jesus O*. (2007) 40 Cal.4th 859, 861 (*Jesus O.*).) Defendant contends the diaper bag was not "taken from Hickok's

person" because it "was in the main compartment of the shopping cart, separated from her person." We disagree.

Generally, to satisfy the "from the person" requirement, the property taken must have been "'actually upon or attached to the person, or carried or held in [the person's] actual physical possession.'" (*Jesus O.*, *supra*, 40 Cal.4th at p. 863.) Property is "attached to the person" if the person keeps in continual physical contact with the property to maintain dominion and control over it. (*Id.* at p. 864.) Property is also "'attached to [the] person'" if the person is transporting the property in a shopping cart the person is physically grasping. (*Ibid.*)

But property is not "attached to [the] person" if the person voluntarily lays the property aside and ceases physical contact with the property, even if the property remains in the person's immediate presence and under the person's actual control. (*Jesus O.*, *supra*, 40 Cal.4th at pp. 864-865.) Thus, in *People v. McElroy* (1897) 116 Cal. 583, the victim used his trousers containing money as a pillow. The defendant took the trousers as the victim slept. The Supreme Court reversed his conviction for grand larceny, concluding insufficient evidence showed the money had been taken from the victim's person because to meet that requirement, the property must "in some way" be on "or attached to the person, or carried or held in actual physical possession . . . or . . . held or carried in the hands, or by other means," and there the victim had effectively laid his trousers aside to use them as part of his bed while he slept. (*Id.* at pp. 586-587.)

Here, however, Hickok had not laid aside the diaper bag but was actively carrying it "'by other means,' i.e., through the medium of the shopping cart with which, at the time of the theft, she was both in physical contact and control" (*In re George B.* (1991) 228 Cal.App.3d 1088, 1092 (*George B.*)) by virtue of her act of placing her baby into it at the time defendant took the diaper bag. Because we consider the evidence in the light most favorable to the judgment, the sufficiency of that evidence is not negated by Hickok's further testimony that her hands were not on the cart and that she may have

9

already placed her baby into it when defendant took the bag. "Just as the shopping cart was 'attached to [her] person' [by way of her baby] so also were its contents in precisely the same sense as are the contents of a purse which is stolen from the physical grasp of the victim." (*Ibid*.; see also *People v. Huggins* (1997) 51 Cal.App.4th 1654, 1657 [sufficient evidence supported the "from the person" requirement for grand theft person where victim placed purse next to foot to maintain dominion and control].)

*People v. Williams* (1992) 9 Cal.App.4th 1465, 1471-1472, which reversed a conviction for grand theft from a person where the victim threw her purse onto the passenger seat of her car before the defendant took it, is distinguishable for the same reason. It therefore does not persuade us that *George B.*'s "theory of liability through connectedness was essentially rejected in *Williams*."

Defendant also claims *George B.* misapplied *McElroy*. But although *George B.* distinguished *McElroy*, *Jesus O.*, did not disapprove of its analysis, despite expressly disapproving that of another case. (*Jesus O.*, *supra*, 40 Cal.4th at pp. 864, 867.) To the contrary, *Jesus O.* cited *George B.* with approval in noting that Jesus O.'s actions taking the cell phone dropped by the victim after assaulting him "pose[d] a 'threat of injury or death' to the victim just as surely as – and perhaps more than – some of the cases upholding a finding of theft from the person, and thus satisfy the rationale for making theft from a person a more serious crime than ordinary theft." (*Id*., at pp. 868-869.) We thus disagree that "[f]ocusing on threat level[s] leads to vague and unpredictable results" and decline to conclude *George B.* was wrongly decided.

*2. Sua Sponte Instruction Misdemeanor Elder Abuse*

Defendant argues the court erred in failing to instruct sua sponte on misdemeanor elder abuse as a lesser included offense of felony elder abuse. We disagree.

"A trial court must instruct on a lesser included offense if there is substantial evidence from which a reasonable jury could conclude the defendant is guilty

10

of the lesser offense, but not the charged offense. [Citation.] 'In deciding whether evidence is "substantial" in this context, a court determines only its bare legal sufficiency, not its weight.' [Citation.] If there were such evidence, we as the reviewing court then ask whether the error requires reversal of the defendant's conviction for the greater offense. [Citation.] In a noncapital case, the error in failing to instruct on a lesser included offense is reviewed for prejudice under *People v. Watson* (1956) 46 Cal.2d 818[] which requires reversal of the conviction for the greater offense 'if, "after an examination of the entire cause, including the evidence" [citation], it appears "reasonably probable" the defendant would have obtained a more favorable outcome had the error not occurred.' [Citation.] Probability under *Watson* 'does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility.'" (*Racy*, *supra*, 148 Cal.App.4th at p. 1335.)

Misdemeanor elder abuse occurs when a "person who knows or reasonably should know that a person is an elder or dependent adult and who, under circumstances or conditions *other than those likely to produce great bodily harm or death*, willfully causes or permits any elder or dependent adult to suffer, or inflicts thereon unjustifiable physical pain or mental suffering . . . ." (§ 368, subd. (c), italics added.) "[T]he difference between felony elder abuse and misdemeanor elder abuse is whether the abuse is perpetrated 'under circumstances or conditions likely to produce great bodily harm or death.' If it is, the crime is a potential felony. (§ 368, subd. (b)(1).) If it is not, the crime is a misdemeanor. (§ 368, subd. (c).) Misdemeanor elder abuse is a lesser included offense of felony elder abuse." (*Racy*, *supra*, 148 Cal.App.4th at pp. 1334-1335.)

Defendant contends a "reasonable chance" exists the jury would have convicted him of misdemeanor elder abuse had it been instructed on it. He relies on *Racy*, *supra*, 148 Cal.App.4th 1327, but that case is inapposite. *Racy* reversed the defendant's felony elder abuse conviction due to the trial court's prejudicial error in failing to instruct the jury on misdemeanor elder abuse as a lesser included offense of felony elder abuse, noting the victim "*did not suffer great bodily harm* during the

11

incident, so the jury was left to draw inferences about whether the circumstances or conditions under which defendant inflicted physical pain or mental suffering were likely to produce great bodily harm or death." (*Id*. at p. 1335, italics added.) *Racy* explained, "[f]rom the facts that appear in the record, it is reasonable the jury could have viewed [the victim] as a *rather large man who was not likely to suffer great bodily injury* or death during the incident despite his age and physical limitations. [He] is *six feet three inches tall* and *weighs 210* pounds and even after being 'zapped' with the stun gun and pursued by defendant, he was able to retreat to the bedroom, attempt to make a 911 call, and lie down on the bed in a defensive position. He emerged unscathed after being tipped and tripped." (*Id*. at p. 1336, italics added.) *Racy* concluded the failure to instruct on misdemeanor elder abuse was prejudicial because "there was a 'reasonable chance' defendant 'would have obtained a more favorable outcome' had the jury been instructed on misdemeanor elder abuse." (*Ibid*.) Here, in contrast, there was not.

At the age of 85, Hare was 11 years older and even more susceptible to injury and bone fractures than the 74-year-old victim in *Racy*. (See *Racy*, *supra*, 148 Cal.App.4th at p. 1333.) Additionally, unlike the victim in *Racy*, a large man who emerged unscathed after being assaulted in his home (*id*. at p. 1336), Hare was targeted by a man taller and decades younger than her and suffered great bodily harm, as defendant admits, which was so severe that she was bedridden on her back for six to eight weeks, restricted to a wheelchair for the next two and a half months, and thereafter had to use a walker for another three months. The jury also found true allegations that Hare's "great bodily injur[ies]" were "personally inflict[ed]" by defendant. (§§ 12022.7, subd. (c), 1192.7, subd. (c)(8).) It was thus unnecessary for the jury "to draw inferences about whether the . . . conditions under which defendant inflicted physical pain . . . were *likely* to produce great bodily harm" (*Racy*, *supra*, 148 Cal.App.4th at p. 1335, italics added), as it found those circumstances *in fact* produced such harm.

Accordingly, even if the court erred by failing to instruct sua sponte on misdemeanor elder abuse, any such error was harmless as it is not reasonably probable

12

defendant would have obtained a more favorable outcome had the jury been so instructed, (*People v. Breverman* (1998) 19 Cal.4th 142, 177-178), making it unnecessary to address defendant's claim of ineffective assistance of counsel.

*3. Section 654*

Section 654, subdivision (a), provides that "[a]n act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." "'Section 654 . . . applie[s] not only where there was but one "act" in the ordinary sense . . . but also where a course of conduct violated more than one statute and the problem was whether it comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654.'" (*Neal v. State of California* (1960) 55 Cal.2d 11, 19 (*Neal*), disapproved on another point in *People v. Correa* (2012) 54 Cal.4th 331, 334.) "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*Neal*, at p. 19.) "A trial court's implied finding that a defendant harbored a separate intent and objective for each offense will be upheld on appeal if it is supported by substantial evidence" (*People v. Blake* (1998) 68 Cal.App.4th 509, 512).

Here the imposed sentence of 13 years, 8 months consisted of, among other things, 4 years on count 1 (felony elder abuse) under section 368, subdivision (b)(1)), plus 5 years for the attached great bodily injury enhancement under section 1192.7, subdivision (c)(8), consecutive terms of 8 months each on counts 3 ("grand theft person") and 4 (felony evasion), a consecutive term of 1 year, 4 months on count 5 (felony child endangerment), concurrent 180-day terms for each of the misdemeanor simple assault

13

convictions in counts 6 and 7, and 1 year each for the two prior prison terms. Defendant contends section 654 precludes multiple punishment for counts 4 (felony evasion) and 5 (felony child endangerment), as well as for counts 3 (grand theft person) and 4 (felony evasion).

Regarding counts 4 and 5, defendant argues "the relevant act was [his] dangerous driving," which is not "altered by the fact that under count [4, he] endangered the pursuing officers and other motorists while under count [5], he endangered his son who was a passenger. There is still only one relevant act of dangerous driving." The Attorney General acknowledges "it appears that [defendant's] crime of evading police . . . was the basis for his endangerment of his child, and thus constituted an indivisible course of conduct as to counts 4 [felony evasion] and 5 [felony child endangerment]." Because the record contains no evidence of a separate intent, section 654 bars multiple punishment for both offenses. The appropriate remedy is to impose a sentence on each count and then stay punishment on the one carrying the lesser punishment. (*People v. Deloza* (1998) 18 Cal.4th 585, 591-592.) We thus modify the judgment by staying defendant's eight-month term for count 4.

As to count 3, defendant asserts his grand theft was indivisible from his attempt to evade capture by police. But the issue is moot given that the sentence on count 4 has already been stayed and defendant has not claimed his grand theft and child endangerment constitute an indivisible course of conduct.

*4. Oral Protective Order*

Defendant contends no statute authorizes the court's oral order to have "[n]o contact with the victims or witnesses." The Attorney General agrees, as do we.

The oral protective order was not authorized by any of the various statutes allowing a protective order under certain circumstances in a criminal case. "[S]ection 136.2, subdivision (a) authorizes issuance of a protective order during the duration of

14

criminal proceedings.  Yet, this statute does not authorize issuance of a protective order against a defendant who has been sentenced to prison unless the defendant has been convicted of domestic violence.  [Citations.]  Section 1203.1, subdivision (i)(2), which authorizes a no-contact order in some sex offense cases, only applies where the defendant is granted probation.  Section 1201.3, subdivision (a) authorizes a no-contact order for a period of up to 10 years but only when the defendant was convicted of a sexual offense involving a minor victim."  (*People v. Robertson* (2012) 208 Cal.App.4th 965, 996 (*Robertson*.)  Defendant was sentenced to prison, remains in prison, and was not convicted of domestic violence or a sexual offense.  Thus, neither those statutes, nor sections 273.5, subdivision (i) [protective order as a probation condition for willful infliction of corporal injury], 646.9, subdivision (k) [restraining order to protect stalking victims], 1203.097, subdivision (a)(2) [protective orders for spousal abuse victims where the defendant is granted probation], or 3053.6 [no contact order when a defendant is released on parole] authorize the protective order in this case.

Although the court may have had "'inherent authority'" to order a protective order "'where the Legislature has not acted,'" the prosecution must present a "'valid showing to justify the need for the order.'"  (*Robertson*, *supra*, 208 Cal.App.4th at p. 996.)  Here, as in *Robertson*, "the prosecutor did not make an offer of proof or argument justifying the need for a no-contact order" (*ibid*.) and merely represented that a witness told her the tires on his car had been slashed.  This was insufficient to justify the order.  (*Ibid*.)  The no contact order is stricken.


DISPOSITION


The judgment is modified to reflect defendant's eight-month term on count 4 is stayed.  The no-contact order orally imposed by the trial court during the sentencing hearing on January 20, 2012 is stricken.  As modified, the judgment is affirmed.  The

15

clerk of the superior court shall prepare and forward to the Department of Corrections and Rehabilitation an amended abstract of judgment reflecting these modifications.



RYLAARSDAM, P. J.

WE CONCUR:


O'LEARY, J., P. J.


MOORE, J.