[Crim. No. 239.   Department One.—April 28, 1897.]

THE PEOPLE, RESPONDENT, *v.* HARRY MCELROY APPELLANT.

CRIMINAL LAW—GRAND LARCENY—"TAKING FROM PERSON"—PETIT LARCENY—TAKING FROM POCKET UNDER HEAD OF SLEEPER.—In order to constitute the offense of grand larceny, in taking property of less value than fifty dollars from the person of another, the property must, at the time of the taking, be in some way actually upon or attached to the person, or carried or held in actual physical possession; and the taking of the sum of seventeen dollars from the pocket of trousers placed under the head of a sleeper, is not a "taking from the person" within the statutory definition of grand larceny, but only constitutes the offense of petit larceny.

APPEAL from a judgment of the Superior Court of Tulare County and from an order denying a new trial. WHEATON A. GRAY, Judge.

The facts are stated in the opinion of the court.

*H. B. McClure,* and *D. E. Perkins,* for Appellant.

The evidence shows that the property was not taken from the person of the prosecuting witness and therefore does not sustain the verdict of grand larceny. (*Rex* v. *Hamilton,* 8 Car. & P. 49; *Commonwealth* v. *Smith,* 111 Mass. 429.)

*Attorney General W. F. Fitzgerald,* and *Deputy Attorney General Charles H. Jackson,* for Respondent.

Van Fleet, J.—Defendant was charged with grand larceny in stealing seventeen dollars from the person of one James Shaw, and convicted. He complains that the evidence did not warrant the verdict.

Shaw and the defendant had their beds near together in the open air. Shaw on going to bed removed his trousers, in the pocket of which was the money, and placed them under his head as a pillow; while he slept they were abstracted by the defendant, and the money taken. The question is whether these facts show a taking " from the person" under our statute, which makes the offense grand larceny, without regard to the amount stolen, "when the property is taken from the person of another." If it was not such taking, the amount was insufficient to constitute any greater offense than that of petit larceny. (Pen. Code, secs. 487, 488.)

The stealing of property from the person has been from an early period under the English statutes treated as a much graver and more heinous offense than ordinary or common theft—partly by reason of the ease with which it can be perpetrated and the difficulty of guarding against it, and partly because of the greater liability of endangering the person or life of the victim. The same general reason and purpose animate the modern statutes, including our own, and, as in England, the offense is made punishable as a felony. The difficulty has been in defining with precision in all cases what constitutes a taking from the person, and this has given rise to some confusion in the authorities on the question

as to whether the property must be actually on, or at-
tached to, the person, or merely under the eye, or with-
in the immediate reach, and so constructively within
the control of the owner. According to Mr. Bishop:
" The thing taken must be under the protection of the
person, but need not be attached thereto." (2 Bishop's
Criminal Law, 898.) But the only case he cites in sup-
port of the text is *Regina* v. *Selway*, 8 Cox C. C. 235,
where the indictment was for robbery, and the facts
clearly show that offense, and not larceny; the prose-
cutor being attacked while in his room and struck vio-
lently on the head by one of the prisoners, while the
other went to a cupboard in the room and stole a cash
box. Mr. Bishop suggests, tentatively, that " probably
in this particular the rule in robbery applies." But he
cites no case in support of the suggestion, and we think
the authorities against it.

Thus, in *Rex* v. *Hamilton*, 8 Car. & P. 49, where a
man went to bed with a prostitute, putting his watch in
his hat on a table, and the watch was stolen by the
woman while he slept, it was held that the offense was
larceny from the house, and not from the person.

So, in *Rex* v. *Taylor*, Russ. & Ry. 418, where the de-
fendant invited an acquaintance to share his room and
bed for the night, and then stole his guest's watch from
the bed head, it was deemed by the judges not a larceny
from the person. See also *Owen's case*, 2 East P. C. 645;
*Catledine's case*, 2 East P. C. 645, 646; and *Watson's case*,
2 East P. C. 680, 681.

In *Commonwealth* v. *Smith*, 111 Mass. 429, it was held
that where the prosecutor went to bed leaving his clothes
on a chair, and the defendant lodging with him took a
key from the pocket of the clothes and opened the
prosecutor's trunk, and took money therefrom, it was
larceny from the house, and not from the person.

And where a man, with his money in a satchel, went
into a bank and placed the satchel temporarily on the
counter within two feet of him while he transacted his
business, and his attention was distracted for a moment

by one of the defendants while the other abstracted the money, the supreme court of Georgia considered that the larceny was from the house, and not from the person. (*Simmons* v. *State*, 73 Ga. 609; 54 Am. Rep. 885.)

In view of these authorities and the origin of the statute, we think its obvious purpose was to protect persons and property against the approach of the pickpocket, the purse-snatcher, the jewel abstracter, and other thieves of like character who obtain property by similar means of stealth or fraud, and that it was in contemplation that the property shall at the time be in some way actually upon or attached to the person, or carried or held in actual physical possession—such as clothing, apparel, or ornaments, or things contained therein, or attached thereto, or property held or carried in the hands, or by other means, upon the person; that it was not intended to include property removed from the person and laid aside, however immediately it may be retained in the presence or constructive control or possession of the owner while so laid away from his person and out of his hands. Such has been the practical application and construction of this and like statutes by public prosecutors generally, as indicated by the facts of the cases which have been called to our attention. Had the legislature intended that the offense should include instances of property merely in the immediate presence, but not in the manual possession about the person, it would doubtless have so provided, as it has in defining robbery. Robbery is defined as " the felonious taking of personal property in the possession of another from his person *or immediate presence*," etc. (Pen. Code, sec. 211), while the requirement of this offense is that it shall be " taken *from the person*."

Within this rule we are of opinion that the facts did not constitute grand larceny within the statute. The garment from which the money was taken was not at the time on the person of Shaw; it was folded up and used as a part of his bed. Had the garment alone been taken under like circumstances the theft could not be held to

have been from the person. A man does not wear his bed as he does his clothes. The money was no more on his person in any proper sense than if it had been concealed under his bed or elsewhere about it, or left in his clothes upon a chair or hanging on the wall. It is the frequent habit of cautious people upon retiring to place money or valuables under their pillow or between the mattresses; but property so concealed can no more be said to be upon the person of the owner than if it were placed in any other part of the room, and its taking while so placed would not constitute a larceny from the person.

The objection to the sufficiency of the information is not well taken; it informs the defendant in ordinary and concise language of the offense with which he is charged.

Nor are we at liberty to order the defendant discharged from further prosecution. We cannot assume that the evidence upon another trial will be the same; and, even if we could, the facts show a case of petit larceny—an offense of which defendant can be completely convicted under the information.

The judgment and order are reversed, and the cause remanded for a new trial.

GAROUTTE, J., and HARRISON, J., concurred.