[No. C008027. Third Dist. Mar. 25, 1991.]

In re GEORGE B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
GEORGE B., Defendant and Appellant.

COUNSEL

Richard L. Phillips and Barbara Michel, under appointments by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Michael Weinberger and W. Scott Thorpe, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PUGLIA, P. J.**—The accomplice of George B., a minor, stole a bag of groceries from a shopping cart as the victim was pushing the cart in the parking lot of a market. The juvenile court sustained the allegation in a petition (Welf. & Inst. Code, § 602) that the minor committed grand theft from the person. (Pen. Code, § 487, subd. 2.) The minor, already a ward of the court, was continued in that status and committed to the California Youth Authority (CYA). The minor's parents were ordered to compensate the county for the reasonable costs of his support in the CYA and for the cost of legal services rendered to him at county expense. (Welf. & Inst. Code, §§ 903, 903.1.)

The minor alone appeals, contending (1) the evidence does not establish the elements of theft from the person; (2) the prosecution is bound by evidence it presented of the minor's allegedly exculpatory statements; and (3) the order requiring the minor's parents to pay costs for support and legal services is improper. None of these contentions has merit.

The victim, Shirley Ulbrich, drove into a supermarket parking lot with her son, Alex, her daughter Rachell, and her niece, Angela. Ulbrich noticed

two boys standing near the store. Angela recognized one of them as Isaac, a boy with whom she went to school. The other boy was the minor. Angela did not know the minor's name but she recognized him as someone she had previously seen with Isaac. The minor is Isaac's brother.

When Ulbrich left the market she was pushing a shopping cart containing a bag of groceries she had purchased in the store. Isaac grabbed the bag from the cart and ran off with it toward a car parked in the lot. Ulbrich shouted to her son for help.

Alex saw Isaac running with the bag and gave chase. Isaac dropped the bag, ran to the parked car and got in. The minor was sitting in the driver's seat. The minor drove the car out of the parking lot.

Sheriff's Deputy Jackson interviewed the minor. The minor denied that he or his brother had been present when the theft occurred; he claimed they had been at a friend's house.

Sheriff's Deputy Trimble later arrested the minor for theft. The minor admitted to Trimble he had been present when the theft occurred and had been in the car; however, he denied he participated in the crime.

I

Penal Code section 487 provides in relevant part: "Grand theft is committed in any of the following cases: . . . 2. When the property is taken from the person of another."

The minor, citing *People* v. *McElroy* (1897) 116 Cal. 583 [48 P. 718], contends the evidence does not establish that the theft was from the person of another. In *McElroy* the victim had removed his pants and was sleeping with his head resting on them as a pillow. His money was in his pants pocket. The defendant "abstracted" the pants and took the money. He was convicted of grand theft from the person. (*Id.* at p. 584.) The Supreme Court reversed, holding the theft was not from the person of another. (At pp. 586-587.) The court pointed out that theft from the person is a more serious crime than ordinary theft because of its potential to cause injury or death to the victim. But where the theft is from the victim's presence, not his person, the crime is only ordinary theft. (At pp. 584-586.) The court explained that the crime of theft from the person contemplates that ". . . the property shall at the time be in some way actually upon or attached to the person, or carried or held in actual physical possession . . . *or . . . held or carried in the hands, or by other means, upon the person*; . . . [the crime] was not intended to include property removed from the person and laid

aside, however immediately it may be retained in the presence or constructive control or possession of the owner while so laid away from his person and out of his hands." (*Id.* at p. 586, italics added.)

*McElroy* is distinguishable on its facts. Ulbrich had not laid the grocery bag aside or abandoned control of it. She was actively carrying the bag, not in her hands to be sure but, as described in *McElroy*, "by other means," i.e., through the medium of the shopping cart with which, at the time of the theft, she was both in physical contact and control. Just as the shopping cart was "attached to [her] person" so also were its contents in precisely the same sense as are the contents of a purse which is stolen from the physical grasp of the victim. In *McElroy*, neither the money nor the pants were attached to or in the physical grasp of the slumbering victim. Although his head rested on the folded pants, he was neither holding nor carrying them or, perforce, the money. The circumstances in *McElroy* posed little or no threat of injury or death to the victim whereas in the instant case a theft *from* a cart in the victim's immediate grasp posed as real a threat of injury or death as a theft *of* the cart itself.

Other courts which have considered this issue have reached the same conclusion on similar facts. (See generally, 74 A.L.R.3d 271.) In *Mack* v. *State* (Tex.Cr.App. 1971) 465 S.W.2d 941, the victim was in a store using a shopping cart. The defendant distracted her while his accomplice grabbed the victim's purse from the shopping cart and ran off. At the time of the theft, the victim's hand was on the cart. (At p. 941.) The jury was instructed under Texas law that " 'the theft must be from the person; it is not sufficient that the property be merely in the presence of the person from whom it is taken.' " (At p. 942.) The jury convicted defendant of theft from the person. Rejecting a challenge to the sufficiency of the evidence to support the verdict, the reviewing court reasoned: "The theft of the shopping cart under the circumstances presented would have been theft from person, therefore, it would be difficult to argue that theft of the purse from the cart upon which the complaining witness had her hand would not constitute theft from person." (At p. 942.)

In *People* v. *Evans* (1980) 44 Colo.App. 288 [612 P.2d 1153], the victim was pushing a shopping cart along the street. A car driven by the defendant stopped next to the victim and a woman got out and grabbed the victim's purse from the shopping cart. The woman returned to the car and defendant drove away. (At p. 1154.) Defendant was convicted of violating a Colorado statute condemning a taking "from the person of another." (At p. 1156.) The Colorado Court of Appeals, relying on the rationale of *Mack* v. *State, supra,* 465 S.W.2d 941, "conclude[d] that the taking of the purse from the cart which the victim was pushing, and which was under her

control and in her present possession, constitutes taking 'from the person of another.' " (*Evans, supra,* 612 P.2d at p. 1156.)[1]

We hold that substantial evidence supports the court's finding sustaining the allegation the minor committed grand theft from the person.

## II

█ The prosecution offered evidence of the two extrajudicial statements the minor made to the sheriff's deputies. Citing *People* v. *Toledo* (1948) 85 Cal.App.2d 577 [193 P.2d 953], the minor argues that as they were exculpatory, the prosecution is bound by them.

In *Toledo,* the defendant was convicted of manslaughter. In his extrajudicial statements and testimony, defendant admitted that he killed the victim. Defendant's admissions were accompanied by the claim that the victim had first violently attacked him with a knife and that the killing had been committed in self-defense. (85 Cal.App.2d at pp. 578-579, 581.) The defendant's admissions were the only evidence he killed the victim and the prosecution presented no evidence rebutting the defendant's claim of self-defense. (*Id.* at p. 581.) The reviewing court held the evidence insufficient to support the manslaughter conviction, because in the absence of contrary evidence the prosecution was bound by the exculpatory evidence it had presented. (*Id.* at pp. 581-582.) As acknowledged by the *Toledo* court, the rule applies only ". . . where there is no other competent and substantial evidence which could establish guilt." (*People* v. *Acosta* (1955) 45 Cal.2d 538, 542-543 [290 P.2d 1].)

Here, there was other evidence establishing the minor's guilt. The minor's flight from the scene of the crime occurred under circumstances which raise an inference of consciousness of guilt as well as an inference that he intentionally aided and abetted his brother, the actual thief. Moreover, the minor's statements are not, as he argues, "irreconcilable with guilt." In fact they raise an inference of consciousness of guilt. The falsity of the minor's first statement, in which he denied he was present at the crime scene, is demonstrated not only by eyewitness testimony but by his later admission that he was present. His accompanying denial of complicity is self-serving and is also contradicted by other evidence of his guilt.

---

[1] The only other decision we have found involving theft from a shopping cart is consistent with our conclusion in this case. In *State* v. *Lee* (1988) 88 N.C.App. 478 [363 S.E.2d 656], defendant stole the victim's handbag from her shopping cart in a market. He was convicted of larceny from the person. The reviewing court reversed the conviction because, when the handbag was stolen, the cart was "unattended," defendant's accomplice having employed a ruse to lure the victim away from the cart a short distance "to help him find some unsalted sweet peas." (363 S.E.2d at p. 656.)

To the extent the minor contends the evidence is insufficient to prove the criminal intent requisite to accomplice liability, the juvenile court could reasonably infer from the evidence that the minor was aware of Isaac's criminal act and specifically intended to aid his criminal design. (See *People v. Johnson* (1980) 26 Cal.3d 557, 576 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]; *People v. Poggi* (1988) 45 Cal.3d 306, 324-325 [246 Cal.Rptr. 886, 753 P.2d 1082].)

### III

■ The juvenile court ordered the minor's parents to reimburse the county for the costs of support of the minor in CYA and of providing him with legal services. The minor challenges the validity of this order.

We need not address the minor's contention because only a party aggrieved by the order may appeal therefrom. (Code Civ. Proc., § 902; *Winter v. Gnaizda* (1979) 90 Cal.App.3d 750, 754 [152 Cal.Rptr. 700]; *People v. West Coast Shows, Inc.* (1970) 10 Cal.App.3d 462, 467 [89 Cal.Rptr. 290].) A party is aggrieved when the judgment injuriously affects his immediate and substantial interest. (*Gnaizda, supra,* at p. 754.) An appellant may not propound arguments on behalf of others who may have been injured by a judgment but who are not parties to the appeal. (*King v. King* (1971) 22 Cal.App.3d 319, 323-324 [99 Cal.Rptr. 200].) The order to pay costs of support and of counsel is directed to the minor's parents who are not parties to this appeal. The order imposes no burden on the minor. Therefore, he has no standing to challenge it on appeal.

The judgment is affirmed.

Carr, J., concurred.

**SPARKS, J.**—I dissent.

In California, the taking of property of any value "from the person of another" constitutes the crime of grand theft. (Pen. Code, § 487, subd. 2.) If the property is not taken from the person, then the value of the stolen property must either exceed $400 or be of a specified type in order for the crime to be elevated from the misdemeanor offense of petty theft to that of felony grand theft.[1] (Pen. Code, § 487, subds. 1 & 3.) The issue in this case has been considered in an exhaustive annotation and is "whether larceny from the person requires that the property stolen actually be on or attached

---

[1] Petty theft is punishable by a fine or by imprisonment in the county jail for six months. (Pen. Code, § 490.) Grand theft of anything except a firearm, on the other hand, is punishable by imprisonment in the county jail for one year or in the state prison for sixteen months, two years or three years. (Pen. Code, §§ 18, 489, subd. (b).)

to the person of the victim when taken or whether there are circumstances under which the offense may be committed even though the property when taken was not [in] the victim's actual possession." (Annot., What Constitutes Larceny "From a Person" (1976) 74 A.L.R.3d 271, 274.) As the annotation explains, "[i]n many jurisdictions, there are statutes imposing a penalty greater than for simple larceny for larcenies involving, in a typical statute, a taking 'from the person of another.' In cases involving such statutes, the question of what constitutes a taking 'from a person' has frequently arisen, especially where the property involved was not actually on the person of the victim when it was taken, but instead was merely close to him. In answering this question, the courts have split, one group taking the position that the property must have been on the victim's person when taken and the other group holding that it is sufficient if the property was merely within the victim's immediate presence." (*Ibid.*, fns. omitted.) The rationales for holding that the property must be taken directly from the victim's person "include the purpose behind the original larceny from the person statute, that is, to prevent pickpocketing and similar offenses, the general purpose behind such statutes of imposing a greater penalty for thefts endangering the person of the victim, and analogy to robbery statutes defining robbery as a taking from the victim or from his immediate presence, thereby suggesting that 'from the person' is different from 'immediate presence.' " (*Id.* at p. 275.)

Early on, California joined the group of courts holding that the property taken must have been on the victim's person. In *People* v. *McElroy* (1897) 116 Cal. 583 [48 P. 718], the California Supreme Court held that theft of money in the victim's pants, which he had removed and was using as a pillow, did not constitute grand theft. As the high court noted, "[t]he stealing of property from the person has been from an early period under the English statutes treated as a much graver and more heinous offense than ordinary or common theft—partly by reason of the ease with which it can be perpetrated and the difficulty of guarding against it, and partly because of the greater liability of endangering the person or life of the victim. The same general reason and purpose animate the modern statutes, including our own, and, as in England, the offense is made punishable as a felony. The difficulty has been in defining with precision in all cases what constitutes a taking from the person, and this has given rise to some confusion in the authorities on the question as to whether the property must be actually on, or attached to, the person, or merely under the eye, or within the immediate reach, and so constructively within the control of the owner." (*Id.* at pp. 584-585.) In light of its origin, the purpose of the grand theft statute, the court declared, "was to protect persons and property against the approach of the pickpocket, the purse-snatcher, the jewel abstracter, and other thieves of like character who obtain property by similar means of stealth or fraud,

and . . . it was in contemplation that the property shall at the time be in some way actually upon or attached to the person, or carried or held in actual physical possession—such as clothing, apparel, or ornaments, or things contained therein, or attached thereto, or property held or carried in the hands, or by other means, upon the person; that it was not intended to include property removed from the person and laid aside, however immediately it may be retained in the presence or constructive control or possession of the owner while so laid away from his person and out of his hands. . . . Had the legislature intended that the offense should include instances of property merely in the immediate presence, but not in the manual possession about the person, it would doubtless have so provided, as it has in defining robbery." (*Id.* at p. 586.)

The fact that the victim's head was touching the pants when they were taken was not sufficient, the court held, to constitute a taking from the person. "The garment from which the money was taken was not at the time on the person of [the victim]; it was folded up and used as part of his bed. Had the garment alone been taken under like circumstances the theft could not be held to have been from the person. A man does not wear his bed as he does his clothes. The money was no more on his person in any proper sense than if it had been left concealed under his bed or elsewhere about it, or left in his clothes upon a chair or hanging on the wall." (*People* v. *McElroy, supra,* 116 Cal. at pp. 586-587.)

Despite this instructive and controlling case, the majority mistakenly holds that the theft of a bag from a shopping cart pushed by the victim constitutes grand theft. If grabbing pants out from under the victim's head does not constitute grand theft of the person, it is hard to fathom how grabbing a bag out of a shopping cart does. Paraphrasing the *McElroy* court, a woman does not carry a shopping cart as she does her grocery bag. The bag in the cart was no more on her person in any proper sense than if it had been left next to her on the car seat or on the checkout counter.

Two critical points elude the majority. The first is that the property taken must be manually affixed or attached to the body so that its taking will potentially endanger the victim. In the words of the *McElroy* court, grand theft from the person causes "greater liability of endangering the person or life of the victim" (116 Cal. at p. 584) and in the words of the annotator, "endanger[s] the person of the victim." (Annot., What Constitutes Larceny "From a Person" (1976) 74 A.L.R.3d 271, 275.) This potential endangerment of the person of the victim is what is lacking in the present larceny. No doubt the theft in this case startled the victim; perhaps it even frightened her. But what it did not do was endanger her physical person. The grabbing of the grocery bag out of the shopping cart, unlike snatching it from her hand, would not cause the victim to fall or to engage in an

injury-producing tug of war or to otherwise be subjected to the likelihood of physical injury. Thus, one of the central purposes for elevating a common theft to the more severe crime of grand theft is missing in this case.

The second point is that the manner by which the property is carried is the controlling factor. If the property is bodily carried on the person of the victim, then its larcenous taking constitutes grand theft. But if the property is conveyed by means of some mechanical contrivance, be it a shopping cart, a wagon, a hand truck, a dolly, a sled, a wheelbarrow, a gurney or the like, then the property stolen cannot be characterized as having been taken "from the person." (Pen. Code, § 487, subd. 2.) In such a case, the theft is from the cart or other conveyance and not from the person. It is not enough to assert, as the majority does, that this case is distinguishable from *McElroy* because here the victim was carrying the bag "by other means, i.e. through the medium of the shopping cart." Mediums are what distinguish grand thefts from petty ones. If one uses some medium other than the body to carry the property, then the crime cannot be grand theft person.

Nor does the majority's claim that the grocery bag was on the victim's person because it was in the shopping cart and the cart was "attached to [her] person" hold water. The concept of an extension of the person is a legal fiction which, in this context, is simply another name for constructive possession. Of course the bag in the shopping cart remained in the constructive possession of the victim. But as the *McElroy* court ruled, constructive possession of property by the victim, property which has been "laid away from his person and out of his hands," is not sufficient to constitute grand theft. (116 Cal. at p. 586.) Here the grocery bag was not physically attached to the victim's person. Neither her physical contact with the shopping cart, nor her obvious desire to retain possession and control over the bag, suffices to meet the standard mandated by *McElroy*. The out-of-state cases cited by the majority are inconsistent with this binding construction of the California grand theft statute by the *McElroy* court and thus should not be followed.

I would reduce the offense to petty theft and then remand the case to the juvenile court to reconsider its disposition in light of this reduction.

Appellant's petition for review by the Supreme Court was denied June 20, 1991. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.