134 Nev., Advance Opinion 70

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| GABRIEL IBARRA,<br>Appellant,<br>vs.<br>THE STATE OF NEVADA,<br>Respondent. | No. 69617<br><br>**FILED**<br><br>SEP 13 2018 |

Appeal from a judgment of conviction, pursuant to a jury verdict, of one count of larceny from the person. Eighth Judicial District Court, Clark County; Michael Villani, Judge.

*Affirmed.*

Philip J. Kohn, Public Defender, and Jeremy B. Wood and Howard Brooks, Deputy Public Defenders, Clark County, for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens, Chief Deputy District Attorney, and Ryan J. MacDonald, Deputy District Attorney, Clark County, for Respondent.

BEFORE THE COURT EN BANC.

## OPINION

By the Court, PICKERING, J.:

A jury convicted Gabriel Ibarra of larceny from the person. To convict a defendant of this crime the State must prove that, "under circumstances not amounting to robbery, with the intent to steal or appropriate to his or her own use, [the defendant took] property from the

18-35745

person of another, without the other person's consent." NRS 205.270. Ibarra stole a cell phone from a woman sitting next to him at a bus stop. He asked to use her phone to make a call, then, as she handed it to him, he grabbed the phone and ran. Because the woman voluntarily handed him her phone, Ibarra maintains he did not take the phone "from the person of another, without [her] consent," so the State failed to prove its case. We hold that the evidence supports Ibarra's conviction and affirm.

I.

Ibarra approached his victim, E.M., at a Las Vegas bus stop around 3 a.m. E.M. was seated on a bench, texting on her iPhone, when Ibarra sat down next to her. E.M. did not know Ibarra but she responded when he spoke to her, asking her where she was from and what kind of phone she had. After a few minutes, Ibarra asked E.M. if he could use her phone to make a call. Ibarra's request made E.M. "a little nervous," so she asked Ibarra for the number he wanted to call and typed it into her phone before extending her arm to hand him the phone. E.M. testified that Ibarra "grabbed" the phone from her hand, then stood to walk away. When E.M. stood to stay close to her phone, Ibarra ran. E.M. gave chase but soon lost Ibarra. She returned to the bus stop, where she borrowed another person's phone and called the police. Using an iPhone tracking application, the police found E.M.'s phone—and Ibarra, whom they arrested—outside a nearby apartment complex.

E.M. valued her iPhone at $500. Stealing property worth less than $650 constitutes petit larceny, a misdemeanor. See NRS 205.240. Stealing property worth less than $3,500 under circumstances amounting to larceny from the person, by contrast, is a category C felony. See NRS 205.270(1)(a).

The State charged Ibarra with larceny from the person. At trial, Ibarra defended the charge on the ground that, while he might have committed petit larceny, he did not commit the more serious crime of larceny from the person. His reasoning was this: Because E.M. voluntarily handed Ibarra her phone, he did not take it from E.M.'s person, without her consent, or invade her privacy, as the jury was told larceny from the person requires. At Ibarra's request, the judge instructed the jury that petit larceny is a lesser included offense of larceny from the person. The verdict form gave the jury its choice of finding Ibarra not guilty, guilty of petit larceny, or guilty of larceny from the person. After deliberation, the jury found Ibarra guilty of larceny from the person.

Ibarra timely appealed. In a split decision, the court of appeals vacated Ibarra's conviction for the reason the evidence did not establish the elements required for the crime of larceny from the person. The State petitioned for review under NRAP 40B, which we granted.

## II.

### A.

Larceny from the person has been a crime in Nevada since 1911. *See* 1911 Nev. Crimes & Punishments § 557, codified in 2 Nev. Rev. Laws § 6822 (1912). Except for its penalty provisions, the statute has changed little over the past 100 years. NRS 205.270 defines the crime of larceny from the person as follows:

> 1. A person who, under circumstances not amounting to robbery, with the intent to steal or appropriate to his or her own use, takes property from the person of another, without the other person's consent, is guilty of:
>
> (a) If the value of the property taken is less than $3,500, a category C felony and shall be punished as provided in NRS 193.130[.]

SUPREME COURT
OF
NEVADA

(O) 1947A

3

Ibarra's sole issue on appeal is the sufficiency of the evidence to sustain his conviction. He accepts that sufficient evidence established he intended to steal the phone. But he argues that, since E.M. gave him permission to use her phone and handed it to him, Ibarra did not take the phone "without [her] consent," as NRS 205.270(1) requires. He also maintains that he did not "take[ ]" the cell phone "from [E.M.'s] person," as this court interpreted those elements of the crime in *Terral v. State*, 84 Nev. 412, 442 P.2d 465 (1968).

A sufficiency-of-the-evidence challenge asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Middleton v. State*, 114 Nev. 1089, 1103, 968 P.2d 296, 306 (1998) (internal quotation marks omitted; emphasis in original). An appellate court will not second-guess a jury's determination of the facts. Deciding what constitutes "the essential elements of the crime" presents a question of law and statutory interpretation that we decide de novo. *See Coleman v. State*, 134 Nev., Adv. Op. 28, 416 P.3d 238, 240 (2018).

B.

NRS 205.270 does not define what it means to take property "without the other person's consent." Larceny was a crime at common law and included lack of consent as an element of the crime. *See* 3 Wayne R. LaFave, *Substantive Criminal Law* § 19.1(a), at 69 (3d ed. 2017) (at common law, larceny occurred "when one person misappropriated another's property by means of taking it from his possession without his consent"). To define "without the other person's consent" in NRS 205.270, we therefore look to how the common law approached lack of consent in the context of larceny. *See* NRS 193.050 ("No conduct constitutes a crime unless prohibited by

some statute of this state," but the "provisions of the common law relating to the definition of public offenses apply to any public offense which is so prohibited but is not defined, or which is so prohibited but is incompletely defined."); 3 Charles E. Torcia, *Wharton's Criminal Law* § 342, at 350 (15th ed. 1995) ("to understand the language and concepts of modern larceny statutes, an understanding of the pertinent common law is essential [since] if a term known to the common law has not otherwise been defined by statute, it is assumed that the common-law meaning was intended").

Judged by the common law, Ibarra took E.M.'s phone without her consent. At common law, "larceny is committed only when the aim of the thief is to divest the owner of his ownership, in distinction from the mere use or temporary possession; so that a consent which comes short of this necessary intent does not cover the whole ground of the taking, and avails nothing." 2 Joel Prentiss Bishop, *Commentaries on the Criminal Law* § 813, at 451 (6th ed. 1877) (footnote omitted); *id.* § 809, at 448 ("if one consents to part with merely the possession, and another, who takes the goods, intends a theft, the latter, without reference to the question of fraud, goes beyond the consent, and commits the offence"); *see Jarvis v. State*, 74 So. 796, 796 (Fla. 1917) ("The consent of the owner in surrendering possession of property must be as broad as the taking."). "A watch might be handed by the owner to a friend to be used only for a moment in timing a race, and to be kept right in the presence of the owner." Rollin M. Perkins, *Criminal Law* § 1, at 197 (1957). The friend would "have custody only" and if, at the time he accepted the watch, he intended to and did steal it, permanently dispossessing the owner of his watch, the friend committed the crime of larceny. *Id.*; *see* Charles Hughes, *Hughes' Criminal Law: The Law of Crimes, Prosecutions, Defenses and Procedure as Determined by Decisions*

*of the Courts of Last Resort in the United States and England* § 398, at 105 (1901) (larceny from the person was properly found where the "defendant entered a store and asked that he be permitted to look at some watches [then, while] the owner was showing the watches to him, the defendant stole two of them"). E.M. agreed to let Ibarra use her phone to make a call; she did not agree to him taking her phone permanently. The mismatch between the limited permission E.M. gave and the permanent dispossession Ibarra intended rendered the taking without E.M.'s consent.

Ibarra's fraud in telling E.M. he only wanted to use the phone briefly to make a call when in fact he intended to steal the phone permanently is another reason the common law would deem the taking to be without E.M.'s consent. Common law larceny required "a trespass in the taking." *See* 3 LaFave, *supra* § 19.1(a), at 69. In 1779, an English court recognized "larceny by trick" as a form of trespassory taking. *Rex v. Pear*, 168 Eng. Rep. 208, 209 (1779). Larceny by trick, a form of larceny, occurs "when a defendant, with the intent permanently to deprive, obtained the personal property of another by fraudulently inducing such other person to part with its possession." 3 *Wharton's Criminal Law*, *supra* § 343, at 350.

Fraudulently representing that you want to hire another's horse temporarily when, in fact, you intend to steal the horse represents a classic case of larceny by trick. *State v. Humphrey*, 32 Vt. 569, 571-72 (1860); *see Rex*, 168 Eng. Rep. at 209. The taking is "*without the consent and against the will of the owner*" because of "the absence of all *free* and *voluntary* consent upon the part of the owner to the party taking his goods and appropriating them to his own use." *Humphrey*, 32 Vt. at 571 (emphasis in original).

> Where the consent of the owner to the taking has been obtained by fraud and deception by inducing

SUPREME COURT
OF
NEVADA

(O) 1947A

6

> him to believe that the taker wishes to obtain the property for an honest and temporary purpose, when in fact the design is to wholly deprive him of it, and where no consent would have been given if the real purpose had been disclosed, this is not regarded as any assent by the owner, and the taking for the purpose and design of the taker is against the will of the owner. A consent thus obtained is wholly nugatory . . . .

*Id.* at 571-72. By 1860, the principle that fraudulently obtained permission-to-use does not equal consent-to-take for purposes of larceny was "fully established . . . in England, and . . . in every State in the Union except Tennessee [and was] so laid down by every elementary book on criminal law." *Id.* at 572; *see* Bishop, *supra* § 814, at 452 (also noting Tennessee as the lone exception to the rule that fraud defeats consent for larceny).

Such reasoning continues today. *See People v. Williams*, 305 P.3d 1241, 1245 (Cal. 2013) ("a property owner who is fraudulently induced to transfer possession of the property to another does not do so with free and genuine consent, so 'the one who thus fraudulently obtains possession commits a trespass'") (quoting 2 Burdick, *Law of Crime* § 535, at 301 (1946)); *Reid v. Commonwealth*, 781 S.E.2d 373, 375 n.1 (Va. Ct. App. 2016) ("Larceny by trick is not a separate and distinct statutory offense . . . but rather is a common law species of larceny where the element of trick substitutes for the wrongful taking element required by larceny."); *see also State v. Barbour*, 570 S.E.2d 126, 128 (N.C. Ct. App. 2002) ("an actual trespass is not a necessary element of larceny when possession of the property is fraudulently obtained by some trick or artifice"). Because Nevada law similarly does not distinguish between larceny by trespassory taking or larceny by trick, the larceny offenses it recognizes encompass both forms of larceny. *See* NRS 205.0833 (titled "Theft constitutes single offense

 

embracing certain separate offenses . . .");[1] NRS 205.220 (grand larceny); NRS 205.240 (petit larceny); *see also People v. Gonzales*, 392 P.3d 437, 441 n.6 (Cal. 2017) ("Larceny includes larceny by trick, which involves fraudulently acquiring possession, but not title, of property.").

While larceny from the person is a distinct offense, it stems from the crime of ordinary larceny. *See Terral*, 84 Nev. at 413, 442 P.2d at 465 ("Larceny from the person was first recognized as a crime distinct from simple larceny by the Statute of 8 Elizabeth in the 16th century."); 3 LaFave, *supra* § 20.3(d)(1), at 235 n.48 ("such a snatching [of property from the owner's grasp] constitutes larceny from the person, a crime less serious than robbery but more serious than ordinary larceny"). At the heart of both larceny from the person and the other larceny crimes is the same offense: taking property of another without consent. 4 *Wharton's Criminal Law*, *supra* § 464, at 40 ("'larceny from the person' . . . is usually a higher grade or degree of larceny permitting severer punishment irrespective of the value of the property"). Because larceny from the person is the crime of larceny with the additional element of taking from the victim's person, it follows that what negates consent for ordinary larceny also negates consent for larceny from the person. We therefore hold, consistent with the common law, that a defendant who through fraud persuades a person to let him use her property, asking to borrow the property temporarily while intending to steal it permanently, takes the property "without the other person's consent" for purposes of NRS 205.270(1).

---

[1]Although Nevada enacted general theft statutes in 1989, codified at NRS 205.0821 through NRS 205.0835, it did not repeal its older larceny statutes and, in fact, recognized that the penalties specified in a "specific statute" may apply if those penalties are greater than those specified in the theft statutes. *See* NRS 205.0835(1).

The dissent dismisses our reading of NRS 205.270(1) as "deeply flawed" because only this particular larceny statute uses the phrase "without the other person's consent." That NRS 205.270(1) explicitly includes the common law requirement that the taking be "without the other person's consent" while Nevada's other larceny statutes do not speak to consent does not turn fraudulently obtained permission-to-use into consent-to-take for purposes of larceny from the person. To so hold would produce the anomalous result that in the one statute in which "without the other person's consent" is stated as an element of the crime, mere permission will defeat the offense, whereas in every other instance lack of actual consent must be shown. This not only does not make sense, it would also defy the mandate in NRS 193.050(3) that the common law apply to any statutory offense that was also a crime at common law and is not defined or incompletely defined.

Also unpersuasive is the dissent's reliance on the distinction some out-of-state cases have drawn between fraud in fact and fraud in the inducement in assessing consent in the sex-crime context. Wholly apart from fraud, the limited permission E.M. gave Ibarra to use the phone did not establish consent to him taking it permanently because, as discussed above, the permission given did not match the taking intended. (This also suggests Ibarra's fraud was fraud in fact, not fraud in the inducement, because Ibarra said he wanted to use the phone, not take it.) More fundamentally, this case does not involve sexual assault but larceny. That every jurisdiction except 19th century Tennessee recognized that fraud defeats consent for purposes of common law larceny properly controls our reading of the phrase "without the other person's consent" in NRS 205.270.

## C.

Ibarra also denies that the State's proof satisfied the "takes property from the person of another" requirement in NRS 205.270. He argues that, because E.M. handed him her phone, the "taking" did not occur until he ran off with the phone, so he did not "take[ ]" the phone "from the person of another." Ibarra's argument misses the mark. A "taking" (or "caption") at common law "occurs when the offender secures dominion over the property." 3 LaFave, *supra* § 19.3, at 90. Ibarra secured dominion over the phone when he grabbed it from E.M.'s hand, intending to steal it, not later, when he ran off with it.

The seminal Nevada case interpreting the "takes property from the person of another" requirement is *Terral v. State*, 84 Nev. 412, 442 P.2d 465 (1968). In *Terral*, the victim was playing craps at the Dunes, with his gaming tokens in front of him on a rack. *Id.* at 413, 442 P.2d at 465. The defendant snatched the tokens from the rack, for which a jury convicted him of larceny from the person under NRS 205.270 (1967). *Id.* We reversed. *Id.* at 413-14, 442 P.2d at 465-66. The tokens were in the victim's presence but not on his person. Unlike the robbery statute, which defines that crime in terms of taking property by violence, force, or fear "from the person of another, *or in the person's presence*," NRS 200.380 (emphasis added); *see* 1911 Nev. Crimes & Punishments § 162, codified in 2 Nev. Rev. Laws § 6427 (1912) (similar), larceny from the person does not require violence, force, or fear but does require that the taking be "from the person of another." Citing *People v. McElroy*, 116 Cal. 583, 48 Pac. 718 (1897), which interpreted comparable California statutes, we held that larceny from the person "is not committed if the property is taken from the immediate presence, or constructive control or possession of the owner." *Terral*, 84 Nev. at 414, 442

SUPREME COURT
OF
NEVADA

(O) 1947A

10

P.2d at 466. Rather, the property must be taken "from the person" of the victim. "The statutory words 'from the person' mean precisely that." *Id.*

After construing NRS 205.270 as limited to takings "from the person" and not from the person's mere presence, *Terral* explained its reasons for reading the statute so literally: "It is important to restrict the coverage of NRS 205.270 to pickpockets, purse snatchers, jewel abstracters and the like, since larceny from the person is a felony, and the value of the property taken is immaterial so long as it has some value." *Id.* The court of appeals majority mistook *Terral's* stated rationale as the judicial creation of new limitations on the crime of larceny from the person—limitations they assume without citing authority (what is a jewel abstracter, anyway?) require larceny from the person to occur through stealth, not fraud. But "pickpockets, purse snatchers, jewel abstracters, and the like" resemble one another in a more obvious way: They all (except possibly jewel abstracters) take property "from the person" of their victim. *McElroy* confirms that this is all *Terral* meant by the above-quoted language, for it explains its rationale in terms *Terral* paraphrased, making explicitly clear that the taking required for larceny from the person can occur openly or through either stealth *or fraud*:

> In view of these authorities and the origin of the statute, we think its obvious purpose was to protect persons and property against the approach of the pick-pocket, the purse-snatcher, the jewel abstracter, *and other thieves of like character who obtain property by similar means of stealth **or fraud**,* and that it was in contemplation that the property shall at the time be in some way actually upon or attached to the person, or carried or held in actual physical possession—such as clothing, apparel, or ornaments, or things contained therein, or attached thereto, *or property held or carried in*

SUPREME COURT
OF
NEVADA

(O) 1947A

*the hands, or by other means, upon the person*; that it was not intended to include property removed from the person and laid aside, however immediately it may be retained in the presence or constructive control of the owner while so laid away from his person and out of his hands. . . . Had the legislature intended that the offense should include instances of property merely in the immediate presence, but not in the manual possession about the person, it would doubtless have so provided, as it has in defining robbery.

*McElroy*, 116 Cal. at 586 (emphasis added).

Larceny from the person carries a heightened penalty over other forms of larceny because, with larceny from the person, "the person of another has been violated and his privacy directly invaded." *Terral*, 84 Nev. at 414, 442 P.2d at 466. But this is not the sole reason for the heightened penalty. A taking from the person, as opposed to other, more remote forms of theft, places the victim at risk of confrontation, physical injury, and alarm. *See United States v. McVicar*, 907 F.2d 1, 2 (1st Cir. 1990), *abrogated on other grounds by Descamps v. United States*, 570 U.S. 254 (2013). While larceny from the person does not require the taking to be accomplished by force, violence, or fear of injury as robbery does, *see* NRS 200.380—remember, larceny from the person can only occur "under circumstances not amounting to robbery," NRS 205.270—a taking "from the person of another" carries risks of physical and emotional harm that thefts that do not occur in close proximity to the victim do not. Interpreting NRS 205.270 to include all types of taking from a victim's physical person supports the statute's objective: penalizing as a felony and therefore discouraging theft that carries an unacceptable risk of violating the victim's person or privacy or causing confrontation, physical injury, or alarm.

SUPREME COURT
OF
NEVADA

(O) 1947A

12

*Terral* and *McElroy* represent a minority view in that they require the taking to be from the victim's physical person; a taking from the victim's immediate presence will not do. *See* 3 LaFave, *supra* § 19.3(b), at 94 ("While the traditional view of larceny 'from the person' is that the taking must be directly from the body of the person, the current majority view is that 'from the person' includes the area within a victim's immediate presence.") (footnotes omitted) (citing *Terral* and *McElroy* as the minority view). The rationale for extending larceny from the person to include takings from the victim's immediate presence is that, in a taking from the victim's immediate presence, "the rights of the person to inviolability [are] encroached upon and his personal security endangered quite as much as if his watch or purse had been taken from his pocket." *Id.* (internal quotation and footnote omitted). Whatever the merits of the current majority view extending larceny from the person to including taking from the victim's immediate presence as well as from his or her physical person, this case does not require us to revisit *Terral*.

Ibarra took the phone from E.M.'s hand, not merely from her presence, so the taking was from her physical person. Unlike *Terral*, where the victim elected to set his tokens on the craps table instead of keeping them on his person, Ibarra separated E.M.'s phone from her person wrongfully, approaching her at the bus stop at 3 a.m., asking to use her phone, then in E.M.'s words "grabb[ing]" the phone and running off with it. These facts pose a threat of violent confrontation and injury to the victim just as surely as—and perhaps more than—other cases sustaining a larceny from the person charge. *See Odom v. Sheriff, Clark County*, 88 Nev. 315, 316, 497 P.2d 906, 906-07 (1972) (affirming the sufficiency of the evidence to charge a defendant with larceny from the person for taking money in a

 

sting operation involving a police officer pretending to be drunk); *In re George B.*, 279 Cal. Rptr. 388, 390-91 (Ct. App. 1991) (upholding charge of grand theft "from the person" where the juvenile stole groceries from a shopping cart the victim was pushing toward her car in the parking lot); *see also In re Jesus O.*, 152 P.3d 1100, 1101 (Cal. 2007) (upholding charge requiring theft to be "from the person of another" where, intending to steal something from the victim, the juvenile assaulted him, causing the victim to drop his cell phone, which the juvenile picked up and kept: "When someone, intending to steal, causes property to become separated from the victim's person, then gains possession of the property, the theft is from the person.").[2]

## D.

Last, Ibarra argues that *Terral* interpreted NRS 205.270 as requiring an additional element not articulated in the statute's plain language: invasion of privacy. He claims that implicit in the rule that the theft occur from the person of another is the requirement that the theft invade the victim's privacy, and that he did not invade E.M.'s privacy when he tricked E.M. into relinquishing her cell phone. Whether *Terral* added the element of invasion of privacy to NRS 205.270 is a question of law

---

[2]The dissent cites three cases it claims reject larceny from the person under circumstances our interpretation of NRS 205.270 would support: *Willis v. State*, 480 So. 2d 56 (Ala. Crim. App. 1985); *People v. Warner*, 801 P.2d 1187 (Colo. 1990); and *People v. Washington*, 548 N.Y.S.2d 48 (Sup. Ct. App. Div. 1989). From a common law perspective, these cases appear to involve false-pretenses crimes, where a defendant uses fraud to obtain *both title and possession* of money or property, not larceny, and so are inapposite. *See Wharton's Criminal Law, supra* § 343. They also involve statutes that differ from ours.

Supreme Court
of
Nevada

(O) 1947A

14

reviewed de novo. *See Paige v. State*, 116 Nev. 206, 208, 995 P.2d 1020, 1021 (2000).

As discussed above, *Terral* limited NRS 205.270 to situations where the defendant takes the property from the victim's physical person, not the "immediate presence, or constructive control or possession of the [victim]." 84 Nev. at 413-14, 442 P.2d at 465-66. *Terral* explained that the Legislature specifically limited the statute's application so as not to confuse larceny from the person, a felony, with petit larceny, a misdemeanor, resulting in inconsistent applications of the law.

> The gravam[e]n of [larceny from the person] is that the person of another has been violated and his privacy directly invaded . . . If we were to confuse the statutory language and rule that "from the person of another" also means "from the presence of another," an accused in some instances could be charged with either a felony or a misdemeanor—a possibility which the legislature did not intend and has carefully precluded by clear language.

*Id.* at 414, 442 P.2d at 466.

*Terral* did not impose an additional element of invasion of privacy to the crime of larceny from the person; it simply interpreted larceny from the person by relating it to similar criminal statutes. *See* 2B Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 51:1 (7th ed. 2012) (discussing the interpretive relevance of related statutes). The term gravamen is used to identify "[t]he substantial point or essence of a claim." *Gravamen, Black's Law Dictionary* 817 (10th ed. 2014). That *Terral* notes that the "gravam[e]n of [larceny from the person]" is invasion of privacy does not impose an invasion of privacy requirement for NRS 205.270. *Terral* identified that what distinguishes larceny from the person from ordinary larceny and justifies its felony treatment is that the

 

act of "taking from the person of another" violates and directly invades the victim's privacy. *See Terral*, 84 Nev. at 414, 442 P.2d at 466. This observation in *Terral* did not impose an additional element of invasion of privacy for the crime of larceny from the person.

## IV.

With NRS 205.270's application and meaning clarified, we now determine whether there was sufficient evidence to convict Ibarra of larceny from the person. Under NRS 205.270(1), the State needed to show that Ibarra took property from E.M.'s person, with the intent to steal or appropriate to his own use, without E.M.'s consent, under circumstances not amounting to robbery. At trial, the State provided evidence that Ibarra asked to borrow E.M.'s cell phone with the ulterior motive of stealing it; that when E.M. extended her arm to hand Ibarra the phone, Ibarra grabbed it from her; and that after E.M. stood to follow Ibarra, he ran.

The judge instructed the jury it could find Ibarra not guilty, guilty of petit larceny, or guilty of larceny from the person. The jury found Ibarra guilty of larceny from the person. From the evidence the State presented, a rational juror could so find. There was sufficient evidence to support Ibarra's conviction, and we therefore affirm the judgment of conviction.

_____, J.
Pickering

We concur:

_____, C.J.
Douglas

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

SUPREME COURT
OF
NEVADA

(O) 1947A

STIGLICH, J., with whom CHERRY, J., agrees, dissenting:

We can affirm a conviction pursuant to NRS 205.270 only if a taking occurred "without the other person's consent." In affirming Ibarra's conviction, the majority removes a material element from NRS 205.270, misapplies this court's precedent, and blurs the distinction between a crime the Legislature deemed a felony and others that it deemed misdemeanors. Therefore, I dissent.

NRS 205.270 contains five elements. It occurs when, (1) "under circumstances not amounting to robbery," (2) "with the intent to steal or appropriate," a person (3) "takes property" (4) "from the person of another" (5) "without the other person's consent." I agree with the majority that substantial evidence in this case satisfies the first four elements.

Unlike the majority, however, I do not believe these facts support a finding that Ibarra took the phone "without the other person's consent." NRS 205.270(1). The uncontested fact is that E.M. willingly handed her phone to Ibarra.[1] Therefore, as the majority notes, she consented to him taking the phone. If the language of NRS 205.270 is unambiguous—as the majority contends it to be—then we must reverse because Ibarra did not take property "without [E.M.]'s consent." Instead, the majority affirms Ibarra's conviction on the ground that fraud vitiates consent as a matter of law. This holding is flawed in several respects.

---

[1]The majority uses the word "grabbed" from the victim's testimony in a manner that suggests the taking was forceful or aggressive. What is clear from the *entirety* of the victim's testimony is that E.M. voluntarily handed Ibarra her phone.

## I.

First, the majority's holding contravenes the Legislature's purpose in elevating larceny from the person to a felony. NRS 205.270 criminalizes a particular *method* of taking: taking in a way that "violate[s]" the person of the victim and "directly invade[s]" her privacy. *Terral v. State*, 84 Nev. 412, 414, 442 P.2d 465, 466 (1968) (defining "the gravaman" of NRS 205.270). That is why "[i]t is important to restrict the coverage of NRS 205.270 to pickpockets, purse snatchers, jewel abstracters and the like, since larceny from the person is a felony, and the value of the property taken is immaterial." *Id.* What "pickpockets, purse snatchers, jewel abstracters and the like" have in common is that they use stealth to take property *without the person's consent. See People v. Warner*, 801 P.2d 1187, 1191 (Colo. 1990) ("[T]heft from the person of another involves circumstances, such as pickpocketing, where something of value is taken from one who is unconscious or unaware of the theft."). They "snatch[ ]" property" from an unaware victim. 3 Wayne R. LaFave, *Substantive Criminal Law* § 20.3(d)(1), at 235 & n.48 (3d ed. 2017).

The reason that the Legislature chose to inflict a greater punishment on theft from the person is because—as the majority notes—such conduct carries an unacceptable risk of "violating the victim's person or privacy or causing confrontation, physical injury, or alarm." Majority opinion *ante* at 12. Just as robbery is punished more severely because taking "by means of force" often leads to violence, *see* NRS 200.380(1), larceny from the person is heightened above ordinary larceny because "such a theft involves special potentialities for physical violence or alarm associated with the taking." *Commonwealth v. Williams*, 567 A.2d 709, 713 (Pa. Super. Ct. 1989) (internal quotation marks omitted). When, for

SUPREME COURT
OF
NEVADA

(O) 1947A

example, a would-be victim discovers a pickpocket's hand in her pocket, she immediately feels that her privacy has been violated and is likely to defend herself using physical force.

But the "victim's person or privacy" is not violated when, as here, the victim willingly hands over property to a fraudster. And the risk of violence is lower when, as here, the victim hands property to a thief and *subsequently* discovers the thief's criminal intent. That is because the thief's criminal intent is not revealed until the thief is some distance from the victim and therefore beyond striking distance. To engage in a physical altercation, a victim must first chase and catch the thief—as E.M. tried to do here. Such chases are equally likely to occur when a thief steals property from the "immediate presence" of the victim. *Terral*, 84 Nev. at 414, 442 P.2d at 466. In sum, the Legislature believed that violence was *more likely* to occur when a thief employs a particular method of taking: "from the person" of the owner "without [that] person's consent." NRS 205.270. That is not how Ibarra took E.M's phone.

In applying larceny from the person to this scenario, the majority radically expands what the *Terral* court thought "important to restrict." 84 Nev. at 414, 442 P.2d at 466. The majority's interpretation expands the scope of NRS 205.270 to apply to any situation in which a defendant fraudulently obtains property from a victim's hands. Examples

include passing an invalid check,[2] deliberately shortchanging a cashier,[3] and any other scenario in which a defendant tricks a victim into handing over property.[4] Such situations—like Ibarra's—involve fraud and deceit, as opposed to stealth and trespass inherent in conduct that NRS 205.270 was intended to cover. *See Terral*, 84 Nev. at 414, 442 P.2d at 466. We should adhere to *Terral* and follow our sister states that declined to expand larceny from the person in the manner espoused by the majority today. *See, e.g., Willis*, 480 So. 2d at 57-58 (Alabama); *Warner*, 801 P.2d at 1188 (Colorado); *Washington*, 548 N.Y.S.2d at 49 (New York). Unlike the majority, I find those well-reasoned opinions more persuasive than two words of dicta from a nineteenth-century California case. *See People v. McElroy*, 48 P. 718, 719 (Cal. 1897).

## II.

The majority's consent analysis is deeply flawed. As an initial matter, the majority confuses E.M.'s consent for Ibarra to *take* her phone—which she provided—with consent for him to *steal* it—which she did not. Unlike every other theft or larceny statute within the Nevada Revised Statutes, NRS 205.270 is exclusively concerned with the act of *taking*. Under a NRS 205.270 conviction, therefore, it is irrelevant that E.M. did not consent for Ibarra to appropriate her property. By contrast, E.M.'s lack

---

[2]*See Willis v. State*, 480 So. 2d 56, 57-58 (Ala. Crim. App. 1985) (holding that such conduct is not a taking from the person).

[3]*See People v. Warner*, 801 P.2d 1187, 1188, 1191-92 (Colo. 1990) (holding that such conduct is not "theft from the person").

[4]*See People v. Washington*, 548 N.Y.S.2d 48, 49 (App. Div. 1989) (holding that a defendant who tricks a victim into voluntarily handing over money has not committed a taking from the person).

Supreme Court
OF
Nevada

(O) 1947A

4

of consent to Ibarra's running away with her phone would be relevant to a conviction for petit larceny, which criminalizes the acts of "steal[ing]" or "tak[ing] and carr[ying] away," NRS 205.240(1)(a), a misdemeanor when the value of the stolen property is less than $650. NRS 205.240(2). Ibarra could also be guilty of "[o]btaining money, property, rent or labor by false pretenses," a misdemeanor when the property obtained is worth less than $650. NRS 205.380(1). Alternatively, he could be convicted of NRS 205.0832(1)(c) for obtaining E.M.'s property by making a "representation or statement . . . which is fraudulent and which, when used or made, is instrumental in causing the wrongful control or transfer of property"—also a misdemeanor when the value of the property is below $650. NRS 205.0835(2). The fact that the Legislature crafted three *misdemeanors* to perfectly cover Ibarra's conduct further indicates that the *felony* of larceny from the person criminalizes something else. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 252 (2012) ("[L]aws dealing with the same subject—being *in pari materia* (translated as 'in a like matter')—should if possible be interpreted harmoniously.").

"Because larceny from the person is the crime of larceny with the additional element of taking from the victim's person," the majority tells us, "it follows that what negates consent for ordinary larceny also negates consent for larceny from the person." The problem with this reasoning is that "ordinary larceny" does not contain an explicit element regarding the victim's consent. The crime of ordinary larceny is complete when the defendant "[i]ntentionally steals, takes and carries away, leads away or drives away" property. *See* NRS 205.220 (grand larceny); NRS 205.240 (petit larceny). Therefore, "larceny from the person" is not simply "the crime of larceny with the additional element of taking from the victim's person."

 

Rather, it is larceny with *two* additional explicit elements: "from the person of another" *and* "without the other person's consent." NRS 205.270(1). We should pause before applying a common law principle from "ordinary larceny" (which does not have an explicit "without the other person's consent" element) to "larceny from the person" (which does). The majority's conclusion to the contrary renders superfluous "without the other person's consent" within NRS 205.270(1). We should not interpret a provision in a way "that causes it to duplicate another provision or to have no consequence." Scalia & Garner, *supra*, at 174 (defining the "Surplusage Canon").

Assuming *arguendo* that the legal concept of fraud negating consent applies to NRS 205.270, the majority misapplies that legal concept. "[T]he basic common law rule [is] that, unless there is statutory language to the contrary, whenever lack of consent is a necessary element of a crime, the fact that consent is obtained through misrepresentation will not supply the essential element of non-consent." *People v. Cook*, 39 Cal. Rptr. 802, 804 (Dist. Ct. App. 1964). In determining whether or not fraud vitiates consent, courts draw a distinction between "fraud in fact" and "fraud in the inducement." Fraud in fact occurs when "an act is done that is different from the act the defendant said he would perform." *State v. Bolsinger*, 709 N.W.2d 560, 564 (Iowa 2006). Fraud in fact vitiates consent because "where there is fraud in the fact, there was no consent to begin with." *People v. Harris*, 155 Cal. Rptr. 472, 478 (Ct. App. 1979). By contrast, fraud in the inducement occurs when "the act is done as the defendant stated it would be, but it is for some collateral or ulterior purpose." *Bolsinger*, 709 N.W.2d at 564. Such fraud does not vitiate consent. *People v. Stuedemann*, 67 Cal. Rptr. 3d 13, 16 (Ct. App. 2007) ("When lack of consent is a necessary

Supreme Court
OF
Nevada

(O) 1947A

6

element of a crime, the fact the defendant employed fraudulent misrepresentations to induce the victim to consent to the proscribed act ordinarily does not vitiate the consent . . . .").

In the instant case, Ibarra obtained E.M.'s consent for him to take the phone from her hand by misrepresenting his motives. Ibarra's act of taking E.M.'s phone was "done as [Ibarra] stated it would be," but for the "ulterior purpose" of appropriating it. *Bolsinger*, 709 N.W.2d at 564. Therefore, his misrepresentation constitutes fraud in the inducement, which does not negate E.M.'s consent for him to take the phone. *See id.* By contrast, fraud in fact would occur, for example, if Ibarra had obtained E.M.'s consent to merely *touch* her phone. In such a scenario, Ibarra's taking of the phone would be "different from the act [he] said he would perform." *Id.* But that is not what occurred here—E.M. consented to Ibarra taking her phone, and that is precisely what he did. Thus, even if we assume that fraud *can* negate consent within the context of NRS 205.270, Ibarra's misrepresentation as to his purpose did not negate E.M.'s consent for him to take her phone.

## III.

Finally, the majority's holding leads to bizarre and irrational results. If E.M. had consented to Ibarra taking her property that lay on the bench beside her, Ibarra could not be guilty of felony larceny from the person, NRS 205.270, because he would have taken the property from the bench rather than E.M.'s person. He would instead be guilty of a misdemeanor, assuming the phone was worth less than $650. *See* NRS 205.0832(1)(c) (theft); NRS 205.240 (petit larceny); NRS 205.380 (obtaining property "by false pretenses"). But, the majority tells us, because E.M. *handed* Ibarra her phone, that misdemeanor is elevated to a category C

felony. *See* NRS 205.270(1)(a). In both scenarios, Ibarra would have used the same means (a lie) to achieve the same result (Ibarra taking the phone with consent). Designating the former scenario a misdemeanor and the latter a felony is not "consistent with reason and public policy." *State v. White*, 130 Nev. 533, 536, 330 P.3d 482, 484 (2014) (internal quotation marks omitted).

In sum, I believe that the majority's decision departs from the plain meaning and purpose of NRS 205.270, it expands what the *Terral* court deemed "important to restrict," 84 Nev. at 414, 442 P.2d at 466, and it broadens a narrowly-defined felony such that it is now practically indistinguishable from misdemeanors. Accordingly, I dissent.

_____, J.
Stiglich

I concur:

_____, J.
Cherry